# REPORTS

OF

# CASES ARGUED AND DETERMINED

## AT JANUARY TERM, 1863.

---

## WILSON *vs.* THE STATE.

[INDICTMENT FOR PERSUADING SLAVE TO LEAVE MASTER'S SERVICE.]

1. *What constitutes offense.*—To authorize a conviction under section 3128 of the Code, it is not sufficient to show that the defendant *advised* the slave to leave the master's service : he must have produced in the slave's mind an intention to leave the master's service; but it is not necessary that he should have a specific intention to induce the slave to leave, nor that the slave should actually leave the master's service.

FROM the Circuit Court of Dallas.
Tried before the Hon. JOHN T. HEFLIN.

THE indictment in this case was found at the November term, 1862, and charged that the prisoner "persuaded a slave named Eliza, the property of Mrs. Susan Gee, to leave the service of her mistress, with the intent to go to a state or country where such slave might enjoy freedom." "On the trial," as the bill of exceptions states, "it was proved that the defendant had used language to the slave named in the indictment, calculated to excite her desire for freedom, and to leave her home ; that he had promised to

make her his wife, and to take her to a free state ; had told her that he would take her where she could not be cuffed and kicked by damned southerners, and where she would be treated as a white woman. These are only some of the expressions proved. The language which he used was of the kind which the Code implies in the section under which he was indicted. The ownership of the slave, the name, and the time, were all proved as alleged. But there was, also, evidence tending to show that, at the last interview, the prisoner's object was to obtain an immediate gratification of his carnal appetite. One of the witnesses testified, that the defendant advised the slave to postpone the time of leaving for several weeks, while the slave urged an immediate leaving; while another testified, that she urged the postponement, and he the immediate leaving. There was no proof of any preparation on the part of either to leave. There was proof that the defendant represented himself to the slave as having just come from the Yankee fleet ; and there was proof, also, that this representation was false. Two interviews were testified to by the witnesses. One witness testified, that he heard the conversation at the first interview casually, and without the knowledge of the parties. The last interview, which was shortly before day, was made after an arrangement with the slave, by which the witness was allowed to get under her bed, in order that he might hear the conversation when the defendant returned. During this last interview, the defendant repeatedly begged the slave to allow him to go to bed with her then ; she kept up the conversation for a while, not appearing to consent, until at last both got into the bed; and the witness, who was under the bed by appointment, thereupon got up, and arrested the defendant. The slave was proved to be of wanton character, and had been kept by white men. Much bad language was used by the prisoner, which is not here set out. There was other evidence, also, which is not stated in this bill of exceptions."

" The defendant asked the court to charge the jury,—

" 1, That if they believed, from the evidence, that the

defendant did not wish or intend to get the slave to leave, but used language promising to take her to a free state only with the purpose of inducing her to submit to his embraces, such promises on his part, thus falsely given, were not sufficient to authorize a conviction.

"2. That if the slave knew she was not going to be taken or enticed away, and if the defendant was not intending to take, or entice, or persuade her away, he must be acquitted."

The court refused these charges, and the defendant excepted to their refusal.

No counsel appeared for the defendant.

M. A. BALDWIN, Attorney-General, for the State.

A. J. WALKER, C. J.—The statute under which the indictment in this case was found, is as follows: "Any person who *persuades* any slave to leave his master's service, with the intent to go to a state or country where such slave may enjoy freedom, *although such slave may not leave his master's service*, * * * must, on conviction, be imprisoned in the penitentiary, not less than five, or more than twenty years."—Code, § 3128. This statute is designed to improve an older one, by the insertion of the words "although such slave may not leave his master's service.—Clay's Digest, 419, § 16. The purpose of this change of the previous law was obviously to prevent the escape of those persons who had poisoned the slave's mind, and produced discontent, with a desire for freedom, not followed by an actual departure from service. The legislative mind was influenced by the apprehension, that the class of offenders just described would escape under the construction of the word "persuade" which the courts would adopt. *Persuade* is frequently used as the synonym of *induce ;* and it also means to "incline the will," "to prevail upon by argument, advice, expostulations, or reasons."—See Webster's and Worcester's Dictionaries. Adopting the former of those two significations of the

word, the courts would hold, that the inducement of the slave to actually leave his master's service, with the specified intent, was a necessary ingredient of the offense. The adoption of that signification would probably have resulted from an application of the rule which requires a strict construction of criminal statutes. Indeed, the law-books very clearly point to such a construction as the proper one. *Respublica v. Roberts*, 1 Dallas, 39; *Regina v. Rhodes & Cole*, 2 Ld. Raymond, 886–889; 1 Bishop on Cr. Law, § 138.

The word certainly is often used, alike in conversation, and in writing, in the latter of the two senses above stated; and the clause inserted by way of improvement of the old law has precisely the effect of excluding the operation of the word, which the former of the two significations would give it. It is therefore to be inferred, that the legislature designed that the latter meaning should be adopted, and that the act of persuasion should be consummated when the will of the slave was influenced, or, in other words, when an intent in the slave's mind to do the specified thing, with the specified purpose, was produced.

It has been suggested, that "persuades" should be construed to mean "advises"; and that the mere act of advising a slave to leave his master's service, with the intent to go to a state where he might enjoy freedom, would constitute the offense. There are two conclusive objections to such a construction. "Advise" has not the same meaning with "persuade;" and the rules for construing penal statutes do not permit us to strike out any of the necessary requisites to make an offense, as implied from the language used. "Persuade" embraces in its meaning more than "advise"; and we could not treat it as the synonym of "advise," without dispensing with what the word used clearly implies is a part of the offense.

We hold, that the "intent" to leave her master's service, with the intention of going to a state where she might enjoy freedom, is an ingredient of the offense. But a specific intent on the part of the accused to induce her to leave her master's service was not necessary to a conviction.

The general doctrine is, that if a man intends to do what he is conscious the law (which every one is presumed to know) forbids, there need not be any other evil intent. 1 Bishop on Cr. Law, § 252 ; *Stein v. State*, at January term, 1862. If the defendant in this case intentionally persuaded the slave to leave her master's service, with the intent to go to a state where she could enjoy freedom, he is guilty, no matter whether he intended that she should actually depart from her owner's service or not. Having intentionally done an unlawful act, there need not be any other evil intent. It may be further remarked, that a man is presumed to intend the natural, necessary, and even probable consequences of his acts.—1 Bishop on Cr. Law, § 248, The presumption of a purpose to do the unlawful act would result from the doing or saying of things, the natural, necessary, or probable consequences of which, would be the accomplishment of it; but this presumption is not conclusive, and might be rebutted.

It results from the principles above announced, that the court erred in refusing to give the last charge asked by the defendant; and for that error, the judgment of the court below is reversed, and the cause remanded, that the prisoner may again be tried. The usual order will be made for remanding the prisoner to the appropriate county for trial.