PER CURIAM.
These consolidated cases originated from separate complaints for a declaratory judgment, and motions for temporary restraining order, preliminary injunction and permanent injunction, seeking to have declared null and void actions by the Honorable Fob James, as Governor of the State of Alabama, and other state officials, in acquiring property for construction of a prison facility in Limestone County.
The trial court, sitting ore tenus, found for the Defendants/Appellees on all issues. We affirm.
FACTS
Appellants David Conn and Faye Conn are residents and landowners in Limestone County. Appellants Tommy Carter and Albert McDonald are current and former members of the Alabama legislature, respectively, representing Limestone County.[1] Appellants D.L. Putman and Clark Moore are citizens, landowners, and taxpayers in Madison County. In 1939, the legislature created the Department of Corrections and Institutions and provided that its director, along with his other duties, “shall be the advisor of the Governor and the Legislature in matters relating to penal and correctional institutions, pardons and paroles and related matters.” Acts of Alabama No. 91, p. 118, 121 (1939); Code 1975, § 14-1-9. In 1953, the legislature created the Board of Corrections. In 1978, Code 1975, § 14-1-9, was amended to read:
“The board shall be the advisor of the governor and the legislature in matters relating to penal and correctional institutions, pardons and paroles and related matters. The board shall advise the governor and the legislature at least 30 days prior to making a decision on construction of permanent facilities or any new or existing prison site.”
On February 2, 1979, Governor Fob James was appointed as temporary receiver of the prison system of Alabama. The legislature abolished the Board of Corrections, effective October 1, 1979, and vested all of its rights, duties, and powers in the Governor, who was authorized to exercise all functions and duties himself or by and through such administrative divisions or officers and employees as he might designate.[2]
On May 21, 1981, the legislature created the Capital Outlay Oversight Commission for the purpose of approving and supervising any capital outlay or capital improvement for the prison system made pursuant to the provisions of the Act creating the Commission.[3] Additionally, the Act appropriated some $45 million dollars, or so much thereof as might be available from the general fund of the State treasury, for use in capital outlays and improvements in the prison system.
On November 3, 1981, Governor James, through his “State of the State” message, advised a joint special session of the legislature of his decision to use certain bond monies for the construction of a prison facility in the Tennessee Valley area. At the request of the Governor, Mr. Joe Bunyan Broadwater, Assistant Director of Finance, located a potential site for a prison in Limestone County. During the last week of June 1982, Mr. Broadwater notified the Governor of an offer received with regard to the purchase of realty known as the “Herman Vann property.”
On August 5, 1982, the Capital Outlay Oversight Commission met and issued a resolution authorizing the disbursement of funds for the purchase of a prison site in west Limestone County, and construction of a correction facility thereon. Subsequently, the “Herman Vann property” was purchased, bids were taken for construction of the new prison, and a contract was let. Construction began on the facility shortly before Governor James left office in early 1983.
*867 Appellants’ argument may best be stated by quoting directly from their brief:
“Alabama Code (1975) Section 14-1-9 requires that before the Board (now replaced by the Governor) can choose a new prison site, the Legislature must be advised at least thirty days prior to the choice. Under the evidence in this case as set out in the statement of facts, the only possible advice that the Governor could have given the Legislature concerning the choice of a prison site in West Limestone County, Alabama, was a speech the Governor made on November 3, 1981, in which he stated that he hoped to build a prison in the Tennessee Valley area from the proceeds of certain bond sales. Plaintiffs contend that that advice is simply insufficient as a matter of law to place the Governor in compliance with Section 14-1-9, and therefore, the attempt of the Governor to choose a site for a prison in West Limestone County, Alabama, without first notifying the Legislature is void.”
DECISION
Code 1975, § 14-1-16, reads as follows:
“Effective October 1,1979, the board of corrections of the state of Alabama is hereby abolished and all rights, all duties, responsibilities, powers, assets, liabilities, contractual rights and obligations and property rights, whether accruing or vested in the abolished agency, are hereby vested in the governor of the state of Alabama.”
When read in conjunction with § 14-1-9, § 14^1-16 evidences a clear intent by the legislature to repose in the Governor the responsibility, previously held by the Board of Corrections, of “advising” the legislature at least 30 days prior to making a decision concerning construction of permanent prison facilities.
On November 3,1981, Governor James, at the convening of the third special session, addressed a joint session of the House and Senate, and indicated his plans to build a 1000-man prison in the Tennessee Valley. The Governor also requested that the legislature appropriate, from funds received by the State for leasing drilling rights on state owned land, an additional $20 million over and above the $45 million already appropriated for construction of new prisons. In response to this request, the legislature appropriated the additional $20 million, providing a total of $65 million for capital outlays and capital improvements. The legislature further provided the funds should be disbursed upon order of the Capital Outlay Oversight Commission.
Contrary to the persuasive argument of Appellants, we are constrained to hold that the Governor’s address to the joint session on November 3,1981, did meet his responsibility of “advising” the legislature 30 days prior to “making a decision” on construction of a permanent prison facility.
Black’s Law Dictionary (rev. 5th ed. 1979) offers the following definition for the word “advise”:
“Advise. To give an opinion or counsel, or recommend a plan or course of action; also to give notice. To encourage, inform, or acquaint. It is different in meaning from ‘instruction’ or ‘persuade.’ Hughes v. Van Bruggen, 44 N.M. 534, 105 P.2d 494, 497. Where a statute authorizes the trial court to advise the jury to acquit, the court has no power to instruct the jury to acquit. The court can only counsel, and the jury are not bound by the advice. ‘Advise’ imports that it is discretionary or optional with the person addressed whether he will act on such advice or not.”
When so defined, and when reviewed in light of the legislative prerogative of appropriations relative to the construction, maintenance, and operation of prison facilities, the advice mandate of § 14-1-9 (supplemented by § 14-1-16) was fully complied with when the Governor “gave notice” to the legislature in a formal joint session of his impending decision to construct the very prison facility here in question. Moreover, the legislature, acting upon such advice, *868 forthwith appropriated the necessary funds for its construction.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES and ADAMS, JJ., concur.
BEATTY, J., concurs specially.

.Tommy Carter is currently a member of the Alabama House of Representatives. Albert McDonald is a former State Senator.

. Code 1975, §§ 14-1-15, -16, -17.

. Act No. 81-764; Code 1975, § 14-1-18.