CASE 85—ACTION FOR MALICIOUS PROSECUTION—MAY 26.

## Ahrens & Ott Manufacturing Company v. Hoeher.

APPEAL FROM JEFFERSON CIRCUIT COURT, LAW AND EQUITY DIVISION.

1. MALICIOUS PROSECUTION—INSTRUCTION ON MALICE.—In an action for malicious prosecution it is error to define malice as "the intentional doing of a wrongful act to the injury of another, without justification or legal excuse therefor." In such an action there must be malice in fact or the motive must be improper or wrongful.
2. SAME—PROBABLE CAUSE.—The court may, in such an action, properly tell the jury that they may infer malice from a want of probable cause.
3. SAME.—What is probable cause is a question of law for the court, but the facts from which the question of probable cause is determined are for the jury.
4. SAME.—Probable cause exists where the person instituting the prosecution believes and has such grounds as would induce a man of ordinary prudence to believe that the person against whom the prosecution is instituted has committed the offense.

Ahrens & Ott Manufacturing Company v. Hoeher.

5. SAME—EVIDENCE.—In an action for malicious prosecution the jury should be instructed that the plaintiff can not recover unless the prosecution was both malicious and without probable cause; and in determining the latter issue the court should permit the defendant to prove all statements made to its agents before the warrant was sworn out tending to connect the appellee with the offense.

6. SAME—ADVICE OF COUNSEL.—Advice of counsel only constitutes probable cause when reasonable diligence has been used to ascertain the facts upon which the advice of counsel was sought.

RANDOLPH H. BLAIN, R. C. KINKEAD AND ZACH PHELPS FOR THE APPELLANT.

1. On probable cause.  17 Ky. Law Rep., 1131; Shaul v. Brown, 4 Am. Rep., 158; Hilliard on Torts, vol. 1, p. 438; Myer v. L., St. L., E. R. R., 17 Ky. Law Rep., 947.

2. Advice of counsel.  Crawford v. Kayser, 5 Ky. Law Rep., 593; Arnold v. Hicks, 5 Ky. Law Rep., 934; Burke v. Rhodes, 13 Ky. Law Rep., 431; 36 Am. St. Rep., 147; Johnson v. Miller, 58 Am. Rep., 231; Dunlap v. New Zealand, 109 Cal., 365; Smith v. Liverpool, 107 Cal., 432; Monaghan v. Cox, 31 Am. St. Rep., 555; Johns R. R. v. Hynt, 59 Vt., 294.

3. Malice not shown.  Shaul v. Brown, 4 Am. Rep., 155; Emmerson v. Cochran, 111 Pa. St., 622; Madison Pa. R. R., 30 Am. St. Rep., 756.

4. Good faith.  Sandell v. Sherman, 40 P., 493.

KOHN, BAIRD & SPINDLE FOR APPELLEE.  (O'NEIL & PRYOR OF COUNSEL.)

1. Express malice was not necessary to be proved.  Want of probable cause was shown from which the jury was authorized to infer malice.

2. It was not competent upon the issue of probable cause to show that Mr. Marschuetz communicated to the officers of the defendant company that he had heard that the plaintiff was attempting to steal the defendant's enameling process.  This did not bring the case within the ruling in the case of Myer v. Railroad, 17 Ky. Law Rep., 945.  See Central Railway Co. v. Brewer, 28 Atl. Rep., 16.  The statement of Marschuetz did not tend furthermore in the slightest to show that any crime had been committed.

JUDGE HOBSON DELIVERED THE OPINION OF THE COURT.

Appellee instituted this action against appellant to recover damages for an alleged malicious prosecution.  The

jury having found for him $5,000 damages, and the court having overruled appellant's motion for a new trial, it seeks by this appeal a reversal of the judgment against it for that amount.

The case arose in this way: Appellant is a corporation engaged in the business of manufacturing plumbers' supplies, such as bath tubs, lavatories, sinks, etc., in the city of Louisville. In this business it possessed a secret process of enameling, by which it is claimed it manufactured a very superior article of bath tubs and the like. It paid $3,000 for the secret process, and expended quite a large sum in introducing and developing it. In February, 1895, it received information that appellee and two of its employes, Louis Link and Theodore Zeutsius, were engaged in a conspiracy, the object of which was to discover this secret process, and sell it to another firm. To prevent this secret from being known, appellant allowed nobody in its mixing room except Charles Ahrens, its inspector, Oscar Marschuetz, its superintendent, and Aloysius Massman, its enameler, unless in their presence, and by their orders. The door was kept locked, and the windows barred. When the materials were mixed in the mixing room, they were taken to the furnace, and, after passing through the furnace, could not be separated so that the secret process might be discovered by chemical analysis or otherwise. But before the mixture passed through the furnace, an expert, by analyzing it, if he had some of the mixture, could ascertain the ingredients and so discover the secret. The proof tends to show that it was Link's duty to oil the machinery in the mixing room when required, and that appellee, who was anxious to learn the secret process of enameling possessed by appellant, had in his possession some of the mixture which Link had

brought to him, and afterwards confessed to appellant that appellee had procured him to do this so that he might learn the secret. Letters written by appellee, strongly confirming this confession of Link's, were delivered by him to appellant. On this information, acting under the advice of its counsel, appellant had a warrant issued against all three of the men for burglary; Zeutsius being also implicated, and the door of the mixing room showing signs of having been forced open. Appellee was arrested when an express wagon was awaiting at the door to take his trunk to the station for the purpose of his leaving the State. The mixture referred to was in his trunk.

When the case came before the grand jury, they found an indictment against the three defendants for grand larceny, the change in the charge being perhaps due to the advice of the counsel for the prosecution. Link was tried on the indictment, and acquitted. It was then dismissed as to the other two defendants, and appellee then filed this suit. He was under arrest for perhaps an hour and a half before giving bond, but was not imprisoned. He testified on the trial that he knew the secret of appellant's process, and had known it for some time; that he was only trying to get from Link information where appellant bought its material; that the mixture he had did not come from appellant's factory, but was bought at a drug store by Link for 35 cents. In view of the fact that his testimony shows that the ingredients he had could be bought at any drug store, and the other facts in the record, his explanation as to what he and Link were after is very unsatisfactory, and from the letters and the other undisputed circumstances it is hard to escape the conclusion that the conspiracy existed as charged by appellant. Still, under the rule adopted in this State, there was some evidence tend-

ing to sustain appellee's version of the transaction, and the court properly refused to instruct the jury peremptorily to find for the defendant.

After telling the jury that appellant was not liable unless the prosecution was malicious, and without probable cause, the court thus defined malice:

"The court instructs the jury that by the terms 'maliciously' and 'malice,' as used in these instructions, is meant the intentional doing of a wrongful act to the injury of another, without justification or legal excuse therefor." In Bishop on Noncontract Law, sec. 231, the learned author says that the meaning of the word "malice" depends largely upon the subject to which it is applied, and that in a general way its meaning is as above defined. He then adds: "In the law of malicious prosecution it requires the mental condition or purpose, which judicial decision has made an indispensable element in the wrong. It is not a mere fiction of law, but it must be malice in fact. Taking these views for our guide, the malice in malicious prosecutions is not necessarily, while it may be, ill will to the individual; but it is any evil or unlawful purpose, as distinguished from that of promoting the justice of the law."

The same rule is laid down in Cooley on Torts (1st Ed.), 185, where it is said that the motive must be improper or wrongful.

Tested by this rule, the instruction quoted should not have been given. The court properly told the jury that malice might be inferred by them from the want of probable cause; but this is an inference that the jury may or may not make. The existence of malice is a question for the jury on all the facts and circumstances of the case, and the jury, from the definition of malice given them, may have understood that they must regard the prosecution to be malicious in law if without justification or legal

excuse, although there was, in their judgment, no malice in fact.

The court properly defined probable cause, but he did not tell the jury what facts constituted probable cause in this case. What facts constitute probable cause is a question of law for the court. Lancaster v. Langston 18 Ky. Law Rep., 299 [36 S. W., 521]; Meyer v. L., St. L. & T. Railway Co., 17 Ky. Law Rep., 945 [33 S. W., 98]. The court should tell the jury what facts constitute probable cause, and let them determine, in a case like this, whether these facts are proved. Anderson v. Columbia F. & T. Co. [50 S. W., 40]. The court should have instructed the jury that there was probable cause in this case if appellant's agent, when he instituted the criminal proceeding, believed, and had such grounds as would induce a man of ordinary prudence to believe, that appellee had entered into a conspiracy with Link or Zeutsius to get illegally their secret process of enameling, and in furtherance of that design, either by himself or one of them, had forced open the door of appellant's mixing room, or taken therefrom some of its secret mixture, without its consent, for the purpose of appropriating it to his own use.

On another trial the court should give the jury the instruction asked to the effect that appellant was not liable, although appellee was in fact innocent, unless the prosecution was both malicious and without probable cause. In a case like this the party making the complaint is liable only for an abuse of the process of the court, and, unless their attention is called to it, a jury may fail to observe the distinction, and conclude that, if the party charged with crime was in fact innocent, he ought to recover. The court should also allow all statements made to appellant's officers or agents before the warrant was sworn out by either

Link or Zeutsius to be proven as well as any other information appellant had then, tending to connect appellee with the offense. Though this evidence may not show that he was guilty, it might serve to show that appellant was warranted in doing what he did, or was not actuated by malice.

The court properly instructed the jury that the advice of counsel would constitute probable cause only when reasonable diligence was used to learn the facts on which the advice of counsel was sought. We are referred to Johnson v. Miller, 69 Iowa, 562 [58 Am. R., 231, 29 N. W. 743]; Dunlap v. New Zealand, 109 Cal., 365 [42 Pac., 29], and several other cases, holding otherwise; but the instruction given by the court is sustained by the leading text writers. See Bishop on Noncontract Law, sec. 236; 3 Lawson on Rights, Rem. & Prac., sec. 1096; 14 Am. & Eng. Enc. Law, 55, 56, and cases cited. It follows the rule heretofore announced in this State. Burke v. Rhodes, 13 Ky. Law Rep., 431; Anderson v. Columbia Trust Co., [50 S. W., 40]. This is not only the weight of authority, but it seems to us the necessary result of legal principles. He who consults an attorney about a matter affecting a third person, ought to use that care which men of ordinary prudence would ordinarily use in matters of like magnitude. Less than this would not show good faith. Of course, it is absolutely necessary, in questions of this sort, that people should act upon the advice of counsel; but they must exercise, in doing so, reasonable care to get the truth before the counsel. On another trial the court should define reasonable diligence as that care which men of ordinary prudence would usually exercise under like circumstances.

Judgment reversed, and cause remanded for a new trial and further proceedings not inconsistent with this opinion.