CASE 67—ACTION BY ROBERT E. GATZ AGAINST C. H.
HARRIS FOR MALICIOUS PROSECUTION. — Sept.
28, 1909.

## Gatz v. Harris

Appeal from Jefferson Circuit Court (Common
Pleas Branch, Second Division).

THOS. R. GORDON, Judge.

From a directed verdict for defendant plaintiff appeals.—Reversed.

1.  Appeal and Error—Review—Directed Verdict for Defendant.
    —Where there was a peremptory instruction for defendant plaintiff for the purpose of testing the correctness of the instruction is entitled to have the testimony for him taken as true, including such reasonable inferences as it warranted.
2.  Malicious Prosecution — Defenses—Advice of Counsel.—Advice of counsel is not a defense to an action for malicious prosecution unless the facts are fully and fairly laid before the counsel, and such advice will constitute probable cause only when reasonable diligence is used to learn the facts on which the advice of counsel is sought.
3.  Malicious Prosecution—Action—Question for Jury—Reasonable Diligence to Learn Facts.—In an action for malicious prosecution, where the defense was advice of counsel, whether defendant had, before obtaining plaintiff's prosecution for disorderly conduct, laid the facts fully and fairly before his counsel, held, under the evidence to be for the jury.
4.  Malicious Prosecution—Defenses—Advice of Counsel.—The advice of counsel when properly obtained is a defense to an action for malicious prosecution, however erroneous the advice may be.

GREENE & TILFORD for appellant.

Gatz v. Harris.

POINTS AND AUTHORITIES.

1. "Advice of Counsel" constitutes a defense to actions to recover damages for malicious prosecution only when the advice is honestly sought and in good faith acted upon, and where reasonable diligence is exercised by the party seeking the advice to obtain all the facts and ascertain the truth.

2. Whether or not the advice is honestly sought and in good faith acted upon, and whether or not reasonable diligence is exercised to obtain all the facts and ascertain the truth, are questions for the jury and not for the court.

3. Although appellee's testimony that he had consulted his attorneys and acted on their advice was uncontradicted, the court should have allowed the jury to say whether or not the appellee sought the advice of his counsel honestly and in good faith acted upon it, and whether or not he exercised reasonable diligence to obtain all the facts and ascertain the truth and the giving of a peremptory instruction to find for appellee was error.

4. The Circuit Court properly overruled the demurrer to the petition, as the clerk of the police court of the city of Louisville has power to issue warrants for arrest under section 322 of the Civil Code and Kentucky Statutes, sections 2934 and 2915, and even though the process by which the prosecution was instituted was void, an action for malicious prosecution would nevertheless lie.

Ahrens & Ott Manufacturing Co. v. Hoeher, 21 K. L. R., 299; 51 S. W., 194; Lancaster v. Langston, 36 S W., 521; 18 K. L. R., 299; Meskin v. McCourt, 44 S. W, 975; Anderson v. Columbia Finance & Trust Co., 50 S. W. 40; Albin Co. v. Munford, 21 S. W., 1613; 55 S. W., 913; "Cyc" volume 26, pages 34, 35, 111, 115; Criminal Code, section 322; Kentucky Statutes, section 2934 and 2915; Arnold v. Chapman, 13 R. I., 587; Hirshuser v. Tinsley, 9 Mo. App., 342; Bouvier's Law Dictionary; Webster's International Dictionary; Hays v. Younglove, 7 B. Monroe, 545; 13 K L. R., 431; 20 K. L. R., 1709.

KOHN, BAIRD, SLOSS & KOHN for appellee.

POINTS AND AUTHORITIES.

1. Probable cause is a question for the court.

2 Advice of counsel constitutes probable cause, and when the proof, without contradiction, shows that advice was fairly sought, a complete defense is made, and a peremptory instruction should be granted.

Ahrens & Ott v. Hoehr, 106 Ky., 692, 696; Metropolitan v. Miller, 114 Ky., 755; Ullman v. Abrams, 9 Bush 738; Lancaster

v. Langston, 36 S. W., 521; 18 K. L. R., 299; Mark v. Christian,
22 K. L. R.,1102; 59 S W., 1092; Meyer v. The Railway, 98 Ky.,
365; Albin Co. v. Mumford, 55 S. W., 913; Burks v. Ferriel, 26
K. L. R., 36; Provident v. Johnson, 24 K L. R., 1903; Thayer's
Preliminary Treatise on Evidence at the Common Law, 222 and
following: Lister v. Perryman, S. R., 4, H. L., 521; National Life
v. Gibson, 101 S. W., 895; O'Daniel v. Smith, 66 S W., 284, 23
K. L. R. 1822; Lancaster v. McKay, 103 Ky. 616; Tandy v.
Riley, 26 K. L. R., 98; Masker v. McCourt, 19 K. L. R., 1897;
Farmers', &c. v. Gibbons, 55 S. W. 2.

OPINION OF THE COURT BY JUDGE HOBSON—Revers-
ing.

Dr. Robert E. Gatz, a physician of Louisville,
brought this suit against Dr. C. H. Harris, who is also
a physician practicing there, to recover damages for
malicious prosecution. At the conclusion of the evi-
dence on both sides the court instructed the jury per-
emptorily to find for the defendant, and, the plain-
tiff's petition having been dismissed, he appeals.

As the case went off on a peremptory instruction,
the plaintiff, for the purpose of testing the correct-
nes of that instruction, is entitled to have the testi-
mony for him taken as true, including such reasona-
ble inferences as it warranted. The proof before the
jury was somewhat conflicting; but we will only state
the facts as shown by the evidence for the plaintiff
as it must here be taken as true. On the evening of
December 31, 1907, Mrs. W. H. Merz and her daugh-
ter were injured in a street car collision. About 8
o'clock Dr. Gatz received a telephone call from Jas.
Kinnarney, telling him that a woman had been hurt
about 7 o'clock, and that he must come at once to
Thirty-Fourth and Pflanz avenue and wait upon her;
that it was very important, and he must hurry. He
was told to go to High street and a man would meet
him there and take him to the house, as Pflanz avenue

was an out of the way street, and a number on High street was given him. He went to that house, which was the house of one Guenther. Guenther took him to the Merz house. Mr. Merz met them, and the doctor asked Mr. Merz whether he had sent for him, and he said he had. He took him into the room where his wife was, and, on examining her, he found a piece of gauze over the wound, and asked if there had been a doctor there. They said, "yes," but did not know his name. They said Dr. Harris had also been there, but he did not put the dressing on. He saw the wound needed attention, as hair was dipping into it. He clipped the hair, washed the wound, and dressed it. He found the patient's heart action bad. He gave a heart stimulant; and, as her feet were cold, had hot water bottles put to her feet. With this he left, telling them to tell the doctor, whoever he was, to call him up. The next morning Dr. Harris called him up, and told him he was the doctor who had put on the original dressing. Some talk was had between them. Dr. Harris seemed angry, and something was said about their meeting at the Merz house that evening. Before Dr. Harris had seen Dr. Gatz, or anything further had taken place between them, he went to attorneys, and, upon his statement of what had taken place, a warrant was sworn out against Dr. Gatz, J. L. Richardson and Jas. Kinnarney charging them with disorderly conduct. On a trial of the warrant before the police court they were all three discharged, and this suit by Dr. Gatz against Dr. Harris followed for malicious prosecution.

James Kinnarney was a detective, and a part of his business was the looking up of damage suits. He went to the Merz house soon after Dr. Harris left, and obtained a contract from W. H. Merz employing

J. L. Richardson as attorney to bring a suit for his wife against the street car company. Kinnarney named to Merz several lawyers, and finally at his suggestion Richardson's name was put into the contract. He also suggested to Merz to have another doctor called, and, Merz agreeing to this, Kinnarney called up his family physician, Dr. Roberts, and, not being able to get Dr. Roberts, he got Dr. Gatz, whom he also knew. Richardson knew nothing about the matter at all, and Dr. Gatz knew nothing more than what he was told over the telephone. Dr. Harris' statement as to what took place between him and Dr. Gatz over the telephone was as follows:

"Then I called up Dr. Gatz over the telephone, and asked for the doctor, and he replied that that was him, and I said: 'Did you go down to see Mrs. Merz last night—the injured woman?' He said, 'yes.' I said, 'who sent you down there?' He said, 'the Kentucky Detective Bureau.' Well, I said: 'Doctor, I am the man who applied the first dressing down there, and how does it come that you went in on my case?' Well, he said: 'Mr. Kinnarney sent me there to take charge of it.' I said: 'Did you have a lawyer down there with you too?' and he said, 'yes; had a lawyer.' I said, 'who was the lawyer?' He said, 'Judge Richardson.' 'Well,' I said: 'Suppose you have the judge down there again today. Would that suit you?' He said, 'yes; you call him up.' And he gave me his telephone number. It is double 83. The conversation ended at that." Dr. Gatz says that he did not tell Dr. Harris that Richardson was there, or that he would have him there. His statement on this subject is as follows: "No, sir; he asked me something to this effect—whether I knew who the lawyer was—and I told him that the people had inquired of me whether

Mr. Richardson was a good lawyer or something to that effect, or that they were going to have Mr. Richardson.  I paid little attention to that.  That is all I informed Dr. Harris."

The attorney whom Dr. Harris consulted gave this testimony: "Of course, I do not undertake to give the exact language nor all that was said, but substantially it was that that these men had gone down there in the ambulance chasing business before the woman.  Well, she was in a very nervous condition, and that this doctor had gone up there and taken these dressings off which another doctor had put on there, as he must have known, and put the woman through the cruel treatment of having these dressings taken off, and he putting on his own dressings, and got a contract from the woman for a contingent fee for a lawyer to bring suit against the street car company almost before they could say Jack Robinson, and I said that was certainly in my judgment disorderly conduct, and they ought to be arrested and ought to be punished for it.  Q. And you so advised Dr. Harris? A. I so advised Dr. Harris."

On this evidence the court instructed the jury peremptorily to find for the defendant on the ground that the warrant was sworn out on the advice of counsel.

It is evident from the proof that Dr. Harris took no steps to inform himself as to what the facts were after he had talked with Dr. Gatz over the telephone before he went to the lawyer's office and had the doctor arrested.  He did not go to the Merz house and see if any disorderly conduct had occurred there, or learn why Dr. Gatz had gone there, or what condition he found when he reached there.  The proof shows that Dr. Gatz was not only not disorderly at the Merz

house, but, if the testimony for him is true, was act-
ing at the direction of the husband, and giving the pa-
tient attention which she needed.  It is also apparent
that there is a sharp contradiction between the testi-
mony of Dr. Gatz and Dr. Harris as to what took
place between them over the telephone, and, when
Dr. Harris in stating the facts to his attorney stated
them according to his version of what took place over
the telephone, he did not state to the attorney the real
facts of the case if Dr. Gatz's version of that conver-
sation is true.

Advice of counsel is not a defense in an action for
malicious prosecution unless the facts are fully and
fairly laid before the counsel.  If the real facts are
not laid before the counsel, his opinion is no defense
to an action for malicious prosecution.  Crawford
v. Keyser, 5 Ky. Law Rep. 693; Burke v. Rhodes, 13
Ky. Law Rep., 431; Anderson v. Columbia Finance
& Trust Company, 50 S. W. 40, 20 Ky. Law Rep.
1790; Ahrens & Ott Manufacturing Co. v. Hoeher, 106
Ky. 692, 51 S. W. 194, 21 Ky. Law Rep. 299.

In addition to this the advice of counsel will consti-
tute probable cause only when reasonable diligence
is used to learn the facts on which the advice of coun-
sel is sought.  In the case last referred to the court
said:

"He who consults an attorney about a matter af-
fecting a third person ought to use that care which
men of ordinary prudence would ordinarily use in
matters of like magnitude.  Less than this would not
show good faith.  Of course, it is absolutely neces-
sary in questions of this sort that people should act
upon the advice of counsel; but they must exercise
in doing so reasonable care to get the truth before
the counsel."

Upon the evidence it was a question for the jury whether Dr. Harris laid the facts fully and fairly before his counsel, and whether he had used reasonable diligence to learn what the actual facts were when he laid the matter before his counsel. The advice of counsel, when properly obtained, is a defense to an action like this, however erroneous the advice may be.

Judgment reversed and cause remanded for a new trial, and for further proceedings consistent herewith.