## Louisville and Interurban Railroad Company v. Roberts.

(Decided June 3, 1924.)

Appeal from Jefferson Circuit Court
Common Pleas, Third Division).

1. Malicious Prosecution—Malice Inferred from Want of Probable Cause.—Malice may be inferred from want of probable cause.

2. Malicious Prosecution—Advice of Counsel Defense.—That defendant acted upon advice of counsel, who understood the facts, constituted a defense.

3.  Malicious Prosecution—Peremptory Instruction for Defendant
    Warranted.—Evidence held not to warrant conclusion that ma-
    terial facts were not perfectly understood by attorneys advising
    plaintiff's arrest, so that peremptory instruction should have been
    given for defendant.

PETER, LEE, TABB & KRIEGER and JOHN G. HEYBURN for
appellant.

ALLEN P. DODD and WILLIAM F. BAUMEISTER for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Re-
versing.

On May 2, 1921, about 11:00 p. m., William Jones, the
ticket agent of appellant, was found in the ticket office in
Louisville on Jefferson street, between Third and Fourth,
gagged and securely tied with a rope.  The office had been
robbed of something over $800.00, and Jones when re-
leased claimed that he had been gagged and bound by two
men who held him up and rifled the drawer, but did not
disclose the names of the men.  The police were notified
and in the latter part of the month the company employed
detectives, who finally procured from Jones, in the pres-
ence of his father, Charles Jones, a statement, that be-
cause of threats to do him violence he had been afraid to
tell the truth before that time.  He then signed, in the
presence of his father, a written statement, the material
part of which is in these words:

> "About between the hours of 10 and 10:30 p. m.
> on Monday, May 2, 1921, I had just returned to my
> post of duty in the ticket office, where I was employed
> by the Louisville and Interurban Railroad Company,
> and which is the usual custom, I went to the rear of
> the office to get some envelopes to make my turn-in
> for the day, when a man stepped from behind the
> safe, with a Smith & Wesson revolver, and demanded
> me, under pain of being shot, to remain silent.
>
> "I recognized this man as Dudley Roberts, and
> am positive in this identification on account of having
> known him for approximately fourteen (14) years.
> I then noticed Luther Roberts immediately behind
> Dudley, and while my hands were up in the air,
> Luther produced a piece of regulation trolley rope,
> with which he first tied my ankles, and then tied my
> hands, and I was then pushed to the floor, at which
> time a handkerchief was produced by Dudley and he
> used this to bind my mouth and to act as a gag.

"After I had been securely tied, then both Luther and Dudley Roberts went to the tin box in which is kept the cash receipts of the Louisville & Interurban Railroad Company, and after emptying this box they departed and left me lying on the floor of the office. Before leaving I was told by both that I would be given part of the stolen money. However, to date I have not received any of this money.

"The third night after the robbery, Luther Roberts called at the ticket window and requested me to come to his home, 2116 Lyons street. I accompanied him to that address, after closing the office, about 11:20 p. m. and found Dudley Roberts there. They both questioned me and wanted to know if I had said anything to any one concerning the robbery. I told them I had made no admissions to any one and, through fear, I promised that I would not. I told them at this time that if I saw Dudley Roberts around the office at any time in the future that I intended to have him arrested."

Luther Willis Roberts was employed by appellant as a conductor. The rope with which Jones was found tied was a trolley rope such as conductors used. Dudley Roberts was a brother of Luther Roberts; they both and Jones had been reared in Shelby county and knew each other there. Upon getting the written statement from Jones, appellant had Luther Willis Roberts to come to its office and there confronted him with the two detectives and Jones' statement. He denied any connection with the crime and stated at first that he was on his run as conductor at the time, but on looking at his time card corrected this and said at that time he was initiated in the Odd Fellows' lodge on Walnut street between Second and Third. The detectives say he did not make the correction until they had examined the company's register; he says he made the correction before, and said he left the lodge when it closed, about 10:15 p. m. The lodge building was less than three squares from the place where the robbery occurred. They then consulted a member of the lodge, also its secretary, who both said Jones was there that night and that the lodge adjourned about ten o'clock. After all this was done, being in doubt what course to pursue, the superintendent took the written statement of Jones to the company's attorney, Mr. Edward P. Humphrey, and he being in doubt as to what should be done, telephoned for the Commonwealth's attorney, who came to

the office and after examining the statement of Jones, as he testifies, reached this conclusion: "I told them that based upon this confession, which I had before me, I felt a criminal prosecution should be instituted, but they would be derelict to their company if they did not institute one." Thereupon appellant had a warrant issued for the arrest of Luther W. Roberts. This was Saturday evening, May 28th; he was unable to give bond that evening; he executed bond Monday morning and was released on bond and the case was set for examining trial on Wednesday. In the meantime his brother, Dudley Roberts, was arrested. He then confessed his participation in the robbery; he and Jones then admitted that Luther Willis Roberts had nothing to do with the robbery but that Jones and Dudley Roberts alone had entered into the scheme and carried it out. As soon as this information was obtained appellant notified the prosecuting attorney, and when the case against Luther Willis Roberts was called on the following Monday it was dismissed. The superintendent sent for him; told him that he regretted very much that the mistake had been made and agreed to restore him to his position as conductor; he accepted the offer. He went back to work for the company and worked until the latter part of July, when he brought this action against the company for malicious prosecution and left its employment.

On the trial of the case in the circuit court there was a verdict and judgment in his favor for $650.00. The company appeals.

The only question necessary to be determined on the appeal is whether the defendant was entitled to a peremptory instruction on the evidence heard.

"What facts and circumstances amount to probable cause is a question of law. Whether they exist or not in any particular case where the evidence is conflicting is a question of fact to be determined by the jury. But where there is no conflict in the evidence whether the facts shown amount to probable cause, is ordinarily a question of law for the court." Schott v. Indiana National Life Ins. Co., 160 Ky. 535.

"A peremptory instruction should be given where the facts are undisputed, and on the undisputed facts, there is not room for a difference of opinion among reasonable men as to the inferences to be drawn from them. The gist of an action for malicious prosecution is the abuse of the process of the

court  To make out his case the plaintiff must show both malice and want of probable cause.  The proper enforcement of our criminal laws requires that persons should not be deterred from instituting proceedings to enforce them where they have probable cause for their action.''  Schott v. Indiana National Life Ins. Co., 160 Ky. 538.

"This court has held in a long line of cases that if one, before procuring the arrest of another, laid all the facts upon which he based his prosecution before a competent attorney and fairly obtained his advice that such prosecution was legal, and then in good faith acted upon this advice, it is a complete defense to the action.''  Moser v. Fable, 154 Ky. 521.

"It is a rule, however, that advice of counsel is a defense to an action for malicious prosecution only when all the facts bearing upon the guilt or innocence of the accused which the prosecutor knew, or could have ascertained by reasonable inquiry, are fully and fairly disclosed to counsel.''  Weddington v. White, 148 Ky. 673.

It is undisputed that appellant acted upon the advice of counsel, but it is urged that it did not use ordinary care to ascertain the facts as to appellant's guilt, which it might have obtained by reasonable inquiry, and did not lay all the facts before counsel.  It is said that appellant should have inquired of Dudley Roberts and that this it failed to do; but, according to Jones' statement, Dudley Roberts was equally implicated with his brother and we cannot say that ordinary care required appellant to get the statements of another party to the crime before making the arrest.  If this was the rule few arrests could be made in a reasonable time where, as here, more than one party is implicated.

It is also urged that appellant did not disclose to counsel the fact that appellee denied any connection with the offense.  On this subject the superintendent testifies that he did tell them this and went over the whole matter in detail as he detailed it to the jury.  He said:

"I gave Mr. Humphrey the signed statement made by Jones, and also these gentlemen, the detectives, explained to Mr. Humphrey their conversation with Luther.  I was present when that explanation was made.  And then when Commonwealth's attor-

ney Huffaker came to the office the same information was given to him.''

Mr. Humphrey being asked if Roberts denied connection with the crime answered: ''I think he said he did deny it.'' Mr. Huffaker first said: ''I do not recall that conversation,'' but on re-examination he said: ''My memory is not definite on that.'' And being asked if that information had been given him would it have made any difference in his advice, answered: ''Not the slightest.''

We do not find that there is in the evidence any warrant for the conclusion that the material facts were not perfectly understood by the attorneys; it is apparent from their testimony that they both concluded that the written statement, signed by Jones in the presence of his father, warranted the taking out of the prosecution, and advised that it was the duty of the company to take out the prosecution. In matters of this sort people must act on the advice of counsel; it is to the interest or all that the criminal laws should be enforced, and the fact that appellee was in fact innocent is no ground for a recovery here, unless the prosecution was malicious and without probable cause. Malice may be inferred from the want of probable cause. But the prosecution being taken out under the advice of counsel and being based upon a written statement, which is conceded by all to be genuine, probable cause is shown. Our grand juries are reasonably careful, but in a large percentage of the indictments found by the grand juries the defendants are afterwards acquitted. In the cases where this court has held the question was for the jury where the defendant acted upon the advice of counsel, as in Weddington v. White, 148 Ky. 671, there was evidence showing that reasonable inquiry was not made, such as ordinary prudence required. But in Schott v. Indiana Life Ins. Co., 160 Ky. 533; Moser v. Fable, 164 Ky. 517; Dyer v. Singer Sewing Machine Co., 164 Ky. 538; Cin., etc., R. R. Co. v. Beddow, 189 Ky. 140, and the cases therein cited, this court has held on facts similar to those here, that a peremptory instruction should have been given. Were the rule otherwise responsible people would be afraid to institute such proceedings and the enforcement of the criminal laws would suffer.

The fact that appellant was at the Odd Fellows' lodge until it adjourned did not establish an *alibi* for him; because the lodge adjourned about ten o'clock and there was plenty of time for a man to go, after this, three squares before the robbery was shown to have been committed.

We therefore conclude that on the evidence the peremptory instruction asked by the defendant should have been given.

Judgment reversed and cause remanded for a new trial.