# Shoemaker v. Southwestern Petroleum Company, et al.

(Decided March 16, 1926.)

## Appeal from Lee Circuit Court.

1. **Malicious Prosecution.**—Advice of counsel as defense depends on whether prosecuting witness fully and fairly disclosed all facts.
2. **Malicious Prosecution—Advice of Counsel, Predicated on Assumption of Nonexistence of Controverted Fact, Held no Defense.**— Where plaintiff was arrested for larency of gas from gas well, and where there was controversy as to whether he had contract to connect pipes therewith, advice of counsel, predicated on statements of defendant's witnesses on assumption of nonexistence of such controverted facts, held no defense, if in fact there were a contract and court could not, as matter of law, determine which version was correct.

ROSE & STAMPER for appellant.

J. A. JUDY and ROBERTS & PENDERGRASS for appellees.

OPINION OF THE COURT BY JUDGE MCCANDLESS—Reversing.

In a suit for malicious prosecution at the close of all the evidence a directed verdict was returned in favor of the defendants and this appeal is from the judgment entered thereon.

Appellant is a country merchant and owns a small farm adjacent to his store. Appellees own oil and gas leases on adjoining property, having three gas wells a short distance from appellant's residence and storehouse, though it does not use the gas from these. A controversy arose between the parties relative to the location of appellant's fence, and appellees' superintendent had several discussions with him in reference to this. Appellant claims that they reached a compromise agreement whereby the fence was to be removed in consideration of appellees furnishing him gas for domestic use at his store and residence, permission being given him to connect a gas pipe with the casing head of one of the wells and extending a line to his house at his own expense; that appellees did remove the fence, and that he started to construct the pipe line. In doing this he connected a two inch pipe with the casing head and attached five or six joints of pipe thereto, when he was stopped by appellees, who informed him that if he did not disconnect the pipe they

would have him arrested. The pipe did not reach his building and he desisted, but notwithstanding this, appellees' superintendent made an affidavit before the county judge upon which a warrant of arrest was issued, charging him with larceny. He was arrested and executed bond and appeared at his examining trial. For various reasons this was continued several times, and finally the case was dismissed without prejudice and without an examination of the charge, whereupon he filed this suit. His version of the compromise agreement is corroborated to some extent by the witnesses present. Appellees' superintendent admits that the proposition was made but denies any contract or agreement, and says positively that he told appellant that he would have to remove his fence, and that they could not furnish him gas, except with the consent of the companies and the owner of the royalties; that he saw such owner and he was unwilling for appellant to have the gas; that witness so informed appellant, who said that he was going to have it anyway; witness forbade him making any connections with the well, and when he learned that this had been done, told appellant that unless the pipe was removed he would prosecute him; he further testifies that he communicated the facts over the telephone to the general manager at Lexington, who informed him that he would consult an attorney and advise him what to do, and later called him up and told him, upon the advice of the attorney to have the warrant issued. The general manager, Cooley, corroborates this statement. The attorney with whom Cooley advised was present at the trial but did not testify.

The trial court was of the opinion that the evidence showed that the defendants acted upon the advice of counsel after a *bona fide* disclosure of the facts, and the peremptory instruction was based on this conclusion. The propriety of this instruction depends upon whether the prosecuting witnesses fully and fairly disclosed to counsel all of the facts bearing upon the guilt or innocence of the accused which they knew or could have ascertained by reasonable inquiry. Wedington v. White, 148 Ky. 671; Morse v. Fable, 164 Ky. 517; L. & I. R. R. Co. v. Roberts, 203 Ky. 555; Colt v. Grubbs, 206 Ky. 809.

As to this the superintendent, Mr. McDermott, says:

"Q. Well, what did you tell Mr. Cooley about the warrant? A. I don't know as I can just repeat

the conversation to him about the case, I told him to get him in federal court if you can, and Cooley said, 'Wait until I get into connection with the attorneys and I will call you back' then he called back and said, 'Go to Beattyville and get a warrant for him,' and I did so.

"Q. What did you tell him over the phone? A. I don't know, can't say what I told him, what I told him was the truth.

"Q. You don't know what you did tell Mr. Cooley over the phone? A. I told him the facts in the case, I told him a man was connecting on the gas, and I said, 'What are you going to do about it?' I said, 'Its going to be a mess of trouble' but he said, 'You wait until I take it up with the attorney and I will call you again,' and he called me again and told me. Q. Did you tell him that you had made a contract with him, that he could have gas in consideration of your moving that fence? A. No, I never made any such contract. Q. Did you tell him that Mr. Shoemaker was claiming that contract? A. I told him that he was trying to claim that he had a contract, but that he never had any. Q. That is all you told him? A. That is as far as I told him, yes."

Mr. Cooley testifies that Mr. McDermott told him over the phone, "He has connected up to one of your wells, taken the pipe to his home, can we get into federal court? and I said, what are the facts? and he said, he claims he is going to have gas in disregard to the southwestern and Courtney and I said, 'I will present all of the facts to our attorney, and then call you back.' I said, 'I don't think you can get in federal court.' I called up our attorney, Mr. Judy, who has represented us for four or five years, and I explained to Mr. Judy these facts, and he said, 'Well just go ahead and have a warrant sworn out for him for taking gas from this well, if he won't discontinue it,' and I called Mr. McDermott back and told him to get a warrant out for Mr. Shoemaker.

"Q. Mr. McDermott told you at the time in his conversation that Mr. Shoemaker was claiming a contract for taking gas? Objection. A. Yes, sir. Exception. Q. I will ask you whether or not you laid all of these facts before your attorney? A. Yes, I did."

It is clear that there was some discussion of the use of the gas before appellant made the connection and later some controversy as to whether an agreement had been reached on this question. If appellant's version was correct he was not criminally liable for making such connections. This was a point upon which advice of counsel was important, and it cannot be said that appellees' witnesses fully or fairly informed counsel of the facts relative thereto by merely saying that appellant "was trying to claim a contract but that he never had any." This conclusion assumed the nonexistence of the controverted facts, and the advice of counsel predicated on such assumption would be no defense if the facts were as claimed by appellant, nor could the court as a matter of law determine which version was correct.

It follows that the peremptory instruction for defendant was erroneous, though this defense might be submitted to the jury on an instruction based on appellees' version.

Wherefore, the judgment is reversed and cause remanded for proceedings consistent with this opinion.