## Figuccion v. Prudential Ins. Co. of America et al.

(Decided March 8, 1938.)

ARTHUR W. GRAFTON for appellant.

SAMUEL S. BLITZ and EUGENE R. ATTKISSON for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—
Reversing.

The appellant, James C. Figuccion, and three others, Westerfield, Nichols, and Hafner, had been for several years the agents of the appellee Prudential Insurance Company of America, working under the supervision of its Louisville manager, the appellee J. E. Craigle. They were principally engaged in writing industrial insurance. They received fixed salaries and additional compensation, which varied according to new business procured or old business lost. It was the rule of the company that the agents make weekly settlements of collections with the assistant superintendent. This included reports of lapsed policies and new business. Under certain conditions they were chargeable with premiums on lapsed policies. All of these reports and settlements were sent to the head office of the company, and each agent received from that office weekly statements showing the status of his account and a remittance of his compensation. It was provided by the contract of employment that the agent should have no interest in any collection until the gross sum had been paid to the company. Before the settlement due on August 1, 1933, these four men had become aggrieved at the manner in which the assistant superintendent had handled their accounts with the home office. They claimed that this resulted in their being improperly

charged with items and not receiving proper credits. After conferring with an attorney, they declined on that day to turn over their collections until a true and correct accounting should be made of each man's transactions. It appears that not only Figuccion but the others disclosed the amount of money he was retaining pending such an accounting. He advised Craigle that he was quitting because of his dissatisfaction with the irregular handling of his accounts by the assistant superintendent. According to Craigle, he insisted on the money being turned in and promised that there would be a complete audit and a proper adjustment made.

Not long thereafter these men were severally indicted, charged with the crime of ''embezzlement,'' as defined by section 1358a, Kentucky Statutes. The indictments were returned upon the evidence of Craigle, his office cashier, and assistant cashier. They were found not guilty by a jury. Each of them then filed suit against the appellees for damages for malicious prosecution. Westerfield's case was tried first and, at the conclusion of evidence introduced in his behalf, the court peremptorily instructed the jury to find for the defendants. That judgment was reversed, as we thought the evidence required a submission of the issue. Westerfield v. Prudential Insurance Company of America, 264 Ky. 448, 94 S. W. (2d) 986.

Figuccion's case coming on for trial, the court directed a verdict for the defendants at the close of all the evidence. The plaintiff appeals. Further details of the relations of the parties and their transactions are given in the Westerfield opinion, they being substantially the same as introduced by the plaintiff on this trial. The testimony of Craigle as to the conversations and as to what occurred at the time Figuccion refused to turn over his collections is different in some respects from that related by the four men, particularly as to his efforts to have Figuccion turn in his money and the assurances of a proper accounting. He testified that the only complaint made by Figuccion was the failure to cancel certain personal policies of his own. His testimony likewise negatives any malice or ill will and tends to sustain the bona fides of the prosecution. The plaintiff's accounts as disclosed by the records of the company's head office were introduced and showed a balance due the company of $261 by Figuccion which was substantially the amount he had advised.

Craigle he was withholding. It was the contention of the plaintiff at all times that the company's records did not accurately disclose the accounts because of the intermediate action and manipulation by the assistant superintendent, who was discharged a few days thereafter. The plaintiff introduced in evidence five reports bearing initials of the assistant superintendent which had been retrieved from his waste basket. The evidence in his behalf tended to show that if these and others like them had been forwarded to the company's head office, Figuccion would have received further credits. His evidence showed he had suffered substantial damage as the result of the prosecution.

It is true, as the appellees say, that the law does not look with favor upon suits for damages for malicious prosecution. Neither does it look with favor upon the use of criminal courts to collect debts. The opinion in the Westerfield Case is sufficient authority for holding not only that the petition stated a cause of action, but that Figuccion was entitled to have his case submitted to the jury.

The defendants relied upon the rule that where one causes a criminal prosecution of another after having received the advice of counsel, he is or should be absolved of the charges of malicious prosecution. It appears to have been upon this ground that the trial court gave the peremptory instruction.

We have many cases holding that if one before instituting criminal proceedings had fairly and fully laid all the facts before a competent attorney and secured his advice that the proposed prosecution was proper and legal and then in good faith acted accordingly, it constitutes a good defense. The rule is thus stated in United Furniture Company v. Wills, 158 Ky. 806, 166 S. W. 600, 601:

> "The law is well settled that the advice of counsel, when obtained on a full and true statement of the facts, is a defense to an action like this, however erroneous the advice may be; but, if he has not fully and fairly related the facts to his counsel, then the advice cannot be said to be upon his case, and therefore cannot serve as a shield to him in it. The case of Gatz v. Harris, 134 Ky. 550, 121 S. W. 462, involved a similar question, and we there said:

" 'Advice of counsel is not a defense in an action for malicious prosecution, unless the facts are fully and fairly laid before the counsel. If the real facts are not laid before the counsel, his opinion is no defense to an action for malicious prosecution. Crawford v. Keyser, 5 Ky. Law Rep. 694; Burke v. Rhodes, 13 Ky. Law Rep. 431; Anderson v. Columbia Finance & Trust Company, 50 S. W. 40, 20 Ky. Law Rep. 1790; Ahrens & Ott Manufacturing Company v. Hoeher, 106 Ky. 692, 51 S. W. 194, 21 Ky. Law Rep. 299. In addition to this, the advice of counsel will constitute probable cause only when reasonable diligence is used to learn the facts on which the advice of counsel is sought. In the case last referred to the court said: ''He who consults an attorney about a matter affecting a third person ought to use that care which men of ordinary prudence would ordinarily use in matters of like magnitude. Less than this would not show good faith. Of course, it is absolutely necessary in questions of this sort that people should act upon the advice of counsel; but they must exercise in doing so reasonable care to get the truth before the counsel.' ''

Craigle testified that he had submitted to the company's regular attorney in Louisville, and also to the late Judge James P. Edwards, the records and Figuccion's accounts, which disclosed no indebtedness due Figuccion, and that he had told the lawyers of Figuccion's claim that he ''had been paying excess.'' He did not tell them that Figuccion had offered to show the company wherein those records were inaccurate. An inspector from the home office also went over the records with the attorneys and stated to them that Figuccion claimed he had been improperly charged with certain items, but his claim could not be substantiated by the records. They also submitted a letter which the Honorable Frank E. Daugherty, attorney for the four men, had written the company after they had left the employment under the circumstances stated, in which letter he made claim that the company was indebted to each of these men in a substantial sum, and demanded an accounting. It appears these representatives of the company gave substantially the same information to the commonwealth's attorney before the finding of the indictment.

It is an important consideration that the claims of Figuccion and his associates were not that the books of the company did not reveal an indebtedness to them, but that the assistant superintendent had made improper and irregular reports to the head office, and such manipulation had resulted in the conditions which they deemed justification for withholding the money until an accounting and adjustment could be made. This was the very essence of the plaintiff's action. The jury may reasonably have found that the plaintiff's version of what took place was correct and his reason for doing what he did was sound. They may have thought that these were facts which should have been disclosed to the attorneys, and have found that in failing to make such disclosure the defendant's representatives had not met the conditions of the rule in respect to exercising reasonable diligence to learn the facts and making a full and fair statement of the facts. Bowman v. Combs, 210 Ky. 1, 273 S. W. 719. We think, therefore, that this issue should have been submitted to the jury and that it was error to give the directed verdict. Lancaster v. Langston, 36 S. W. 521, 18 Ky. Law Rep. 299; Smith v. Fields, 139 Ky. 60, 129 S. W. 325, 30 L. R. A., N. S., 870; Weddington v. White, 148 Ky. 671, 147 S. W. 17; Cincinnati, N. O. & T. P. Railway Company v. Beddow, 189 Ky. 140, 224 S. W. 674; Shoemaker v. Southwestern Petroleum Company, 213 Ky. 603, 281 S. W. 533; Cracraft v. McDaniel, 220 Ky. 12, 294 S. W. 812.

The plaintiff offered to prove his good reputation or character, but over the defendant's objection that evidence was not admitted. While it is the rule that ordinarily the good reputation of a party may not be shown until it is attacked, the decided weight of authority and the better reasoning is that in cases of this kind such evidence is competent in chief as having a direct bearing on the question of probable cause and where damages are sought for an injury to that reputation by the alleged malicious prosecution. Louisville & N. Railroad Company v. Owens, 164 Ky. 557, 175 S. W. 1039.

The judgment is reversed.