### SMITH et al. v. KIDD.

Court of Appeals of Kentucky.

Dec. 6, 1951.

Rehearing Denied March 7, 1952.

Thomas Burchett, Ashland, for appellants.

Phipps & Phipps, Ashland, for appellee.

CULLEN, Commissioner.

In an action for malicious prosecution, against Smith Motor Sales and its manager, Lawson Walters, the jury returned a verdict for $1,000 in favor of the plaintiff, Lawrence M. Kidd. From the judgment entered upon that verdict, the defendants have appealed.

The appellants maintain that the trial court erred: (1) In refusing to sustain their demurrer to the petition; (2) in refusing to grant their motion for a peremptory instruction; (3) in admitting incompetent evidence; (4) in giving an instruction authorizing recovery for physical pain and impairment of health; and (5) in refusing to give an offered instruction setting forth the appellants' interpretation of the statutes under which the plaintiff had been prosecuted.

J. T. Kidd, brother of the plaintiff, Lawrence M. Kidd, was the owner of a 1947 Ford automobile. During the year 1948 he was engaged in strip-mining operations near Ashland, Kentucky, and according to his testimony he had equipment worth $110,000, subject to a mortgage of $40,000. His equipment included a number of trucks, and from time to time he bought parts for the trucks from the defendant, Smith Motor Sales. He also had bought one of his trucks from Smith Motor Sales. On some

of his purchases of parts, he was allowed a fleet-owner's discount of 30 percent. It appears that at the time of the controversy out of which this action arose, he owed Smith Motor Sales between $100 and $150 on a back bill for parts.

On November 21, 1948, J. T. Kidd's Ford automobile was damaged in a collision, and it was taken to the Smith Motor Sales to be repaired. It took about two weeks to repair the automobile, and during that period Smith Motor Sales permitted Kidd to use one of their cars. The repair bill amounted to almost $500, but Kidd was allowed to take his automobile, after it was repaired, without any question being raised as to his paying the bill. A few days later, Kidd brought his car back to Smith Motor Sales to have additional repair work done, it appearing that there was something wrong with a front spring. On this occasion, Kidd again was permitted to use one of the Smith Motor Sales' cars while his was being repaired, and when the repair work was completed he again was allowed to take his car out of the garage without any demand that he pay his bill.

Lawrence Kidd testified, and it was admitted by the bookkeeper for Smith Motor Sales, that some time during the period above mentioned, J. T. Kidd brought to the garage, and tendered in payment of the bill for repairing the Ford, a check from his insurance company; but the bookkeeper would not accept the check because a former mortgagee of the car was named as one of the payees, and J. T. Kidd took the check back for the purpose of having a new one issued.

On December 28, 1948, J. T. Kidd and his brother, Lawrence, again brought the Ford car to the garage of Smith Motor Sales, for further repairs. They claimed that the radiator had been defectively installed, and was leaking, and they demanded a new radiator. There was some argument as to whether the radiator could be repaired satisfactorily, or whether a new one was necessary, but the parts manager finally agreed to furnish a new radiator, and the old one was removed preparatory to installing the new one. At this point, J. T. Kidd was asked to come to the main office

of the garage, and was told by the manager, Lawson Walters, that no further work would be done on the car until some arrangement was made for payment of Kidd's old bill for parts, and the bill for repairing the Ford. Walters testified that he also told J. T. Kidd he could not remove the car from the garage until the bill was settled, but J. T. Kidd denied that anything was said about not removing the car.

During the conversation in the main office, word was sent down to the mechanics not to do any more work on the car. It appears that Lawrence Kidd was standing by the car when the mechanics were told to cease work, but it is undisputed that no one told him not to remove the car from the garage.

After the conversation in the main office, J. T. Kidd returned to where the car was, and told his brother that it looked as though they were going to have to fix the car themselves. The old radiator and loose parts were loaded in the car and the two brothers drove the car out of the garage and down the street. Lawrence Kidd testified that the mechanics helped him load the parts in the car and moved a truck to make way for the car to be driven out, but this was denied by witnesses for the garage. The latter testified that the parts had been placed in the car at the time of dismantling the radiator, to keep them from being mislaid, and that the brothers "jumped in" the car and hurriedly drove it away.

The Kidd brothers testified that they drove the car about two and one-half blocks from the garage, and then parked it along the street. One of the brothers went home to get a truck, and the car was towed to J. T. Kidd's home. The testimony for the garage was that several men from the garage drove around the streets for a couple of hours, immediately after the car was taken from the garage, and were unable to find the car. However, these men did not go to Kidd's home.

On December 30, two days after the car was taken, the owners of Smith Motor Sales advised their manager, Walters, to consult an attorney. He consulted an at-

torney who, in addition to being engaged in private practice, was Commonwealth's attorney for the district. Upon advice of the attorney, Walters swore out a warrant for the arrest of Lawrence Kidd and J. T. Kidd, on a charge of violating KRS 434.210 (fraudulent concealment or disposition of property on which there is a lien), and also instituted a civil attachment proceeding.

On either December 29 or December 30, an item appeared in the newspaper to the effect that a Ford automobile had been stolen from Smith Motor Sales. Lawrence Kidd testified that, immediately upon reading the item, he went to the telephone and called the State Police and the city police of Ashland, and told them that the car had not been stolen, but was at J. T. Kidd's home.

On the morning of December 31, the sheriff came to J. T. Kidd's home, with attachment papers, and took the Ford car. J. T. Kidd went with the sheriff, and after several hours secured the release of the car by giving a bond. On the afternoon of the same day, while J. T. Kidd was in town negotiating with the sheriff for the release of the car, the State Police came to the home and arrested Lawrence Kidd. He was placed in jail on the afternoon of December 31 and held there until January 3. It appears that he had a bondsman willing to give bond for his release, but no judicial officer was available to approve the bond, until January 3.

The grand jury, when the charge against Lawrence Kidd was referred to it, refused to return an indictment, and the charge was dismissed.

The action for malicious prosecution is based on the arrest and incarceration above related.

■ Before undertaking discussion of the grounds of error advanced by the appellants, it should be stated that the statute giving a garageman a lien on an automobile for repairs, KRS 376.270, does not impose a criminal penalty for removing the automobile from the possession of the garageman without his consent. The statute under which Lawrence Kidd was arrested,

KRS 434.210, makes it a crime to fraudulently sell, conceal, dispose of, or knowingly remove from the state, any personal property on which there is a lien, with intent to prevent or hinder the enforcement of the lien. This statute does not apply to a mere removal of personal property from the possession of the lien holder, but the course of action followed by the Smith Motor Sales in this case seems to have been under the erroneous impression that the statute did so apply.

■ Appellants' first contention is that their demurrer to the petition should have been sustained. The petition alleged, among other things, that the defendants falsely and maliciously and without probable cause, made affidavit for the purpose of obtaining a warrant against the plaintiff, "which affidavit charged the plaintiff, 'with grand larceny in said County, by fraudulently concealing or disposing of a motor vehicle on which there was at the time a lien given under the statutory laws of the Commonwealth of Kentucky, with intent to prevent or hinder the enforcement of the lien thereon.'" Appellants argue that the petition, in so quoting from the affidavit, shows on its face that defendants had probable cause to believe a crime had been committed. They rely on Ingraham v. Blevins, 236 Ky. 505, 33 S.W. 2d 357, wherein a petition setting forth *in full* an affidavit for a search warrant, was held demurrable. That case is not applicable here, because in that case the quoted affidavit set forth the *facts* on which the charge was based, while in the present case the quoted portion of the affidavit merely states the charge that was made, without giving any of the facts on which the charge was based. The demurrer properly was overruled.

Appellants' argument that they were entitled to a peremptory instruction is based upon the following grounds: (1) Even without regard to the advice of their attorney, the appellants, as a matter of law, had reasonable and probable cause to believe that Lawrence Kidd had committed a felony "by removing the automobile from appellants' garage;" (2) the mere refusal of the grand jury to indict Law-

rence Kidd did not constitute a determination of the proceeding in his favor, within the rule requiring such a determination in order to maintain an action for malicious prosecution; (3) there was no proof of malice; and (4) the advice of their attorney is a complete defense for the acts done by appellants pursuant to that advice.

■ In view of the evidence as to J. T. Kidd's net worth, his tender of the insurance company check, the parking of the car on a street near the garage after it was taken from the garage, the failure of Smith Motor Sales to ascertain whether the car had been taken to Kidd's home, and Lawrence Kidd's notification of the State Police and city police as to the whereabouts of the car, after the newspaper report of theft of the car, it cannot be said that as a matter of law (leaving aside the question of advice of attorney) the appellants had probable cause to believe Lawrence Kidd had committed the felony with which he was charged. It must be remembered that the offense charged was selling, concealing, disposing of, or removing from the state, with intent to hinder or defeat the lien. The only ground for a belief by the appellants that the statute was being violated, was the removal of the car from their garage against their orders, and there was a direct conflict in the evidence as to whether any such orders were given.

■ The record shows that after the grand jury refused to indict Lawrence Kidd, the charge against him was "dismissed," and he was discharged from custody and from bail. Under sections 115 to 117 of the Criminal Code, the charge cannot again be submitted to the grand jury unless the court in its discretion so orders, and we are of the opinion that in this situation there has been a determination of the criminal proceeding in favor of the complainant, within the meaning of the rule requiring such a determination as a prerequisite to the bringing of an action for malicious prosecution. See Proctor Coal Co. v. Moses, 40 S.W. 681, 19 Ky.Law Rep. 419. It seems to be the general rule in other jurisdictions that discharge of the prisoner upon failure of the grand jury to indict is a sufficient determination in his favor to support a malicious prosecution action. 34 Am.Jur., "Malicious Prosecution," section 37; 54 C.J.S., Malicious Prosecution, § 57, page 1026.

■ Regarding appellants' contention that there was a failure to prove malice (again leaving aside the question of advice of counsel), it is the established rule that, where the circumstances warrant the inference, malice may be inferred from want of probable cause. Stearns Coal Co. v. Johnson, 238 Ky. 247, 37 S.W.2d 38; Hendrie v. Perkins, 240 Ky. 366, 42 S.W.2d 502; Peel v. Bramlett, 298 Ky. 20, 181 S.W.2d 448. There was ample evidence in this case from which the jury could have concluded that the appellants were activated by a desire for revenge, and that their motive in prosecuting Lawrence Kidd was not to promote justice, but to coerce the collection of the debt owed them by J. T. Kidd.

■ We come now to the question of advice of counsel. It is the established rule in this state that advice of counsel is a complete defense to an action for malicious prosecution, if all the facts bearing upon the guilt or innocence of the accused person which the prosecutor or informant knew or could have ascertained by reasonable inquiry, are fully and fairly disclosed to counsel. Cincinnati, N. O. & T. P. Ry. Co. v. Bedow, 189 Ky. 140, 224 S.W. 674. The rule applies regardless of whether the counsel is a private attorney or a public prosecuting attorney. Dyer v. Singer Sewing Mach. Co., 164 Ky. 538, 175 S.W. 1037.

■ There is no question in this case but that appellants acted upon advice of counsel—the only question is whether they made a full and fair disclosure of the actual facts to the counsel. Under conflicting evidence, this is a jury question. Figuccion v. Prudential Ins. Co., 273 Ky. 287, 116 S.W.2d 291; Hendrie v. Perkins, 240 Ky. 366, 42 S.W.2d 502; Shoemaker v. Southwestern Petroleum Co., 213 Ky. 603, 281 S.W. 533.

Lawson Walters (manager of Smith Motor Sales) is the one who discussed the case with the attorney. He testified on the trial that he told the attorney he had informed J. T. Kidd that the car could not be removed from the garage until the bill was paid. The attorney testified to the same effect. The affidavit of Walters, on which the warrant of arrest was issued, recites that J. T. Kidd and Lawrence Kidd "slipped into" the repair department of the garage and took the car "without the consent" of the Smith Motor Sales. It is clear, therefore, that one of the facts upon which the attorney's advice was based was the stated fact that the car was removed from the garage in direct violation of a specific order that it not be removed until the bill was paid. This fact would be a most important one bearing on the question of whether the Kidd brothers intended to defeat the lien by selling, concealing, disposing of, or removing the car from the state. It must be considered a material fact.

The testimony of the Kidd brothers was that no one told them they could not remove the car—they were told only that no more work would be done until the bill was paid. Thus there was a direct conflict in the evidence as to a material fact, with the result that there was a jury question as to whether a full and fair disclosure of the facts was made to the attorney. This question was submitted to the jury under a correct instruction, and we are of the opinion that no error was committed in so doing.

The next contention of appellants is that the evidence as to the insurance on J. T. Kidd's automobile was incompetent. There is no merit in that contention. The cases relied on by appellants are those in which evidence as to liability insurance carried by a defendant in an automobile negligence case is held incompetent. Those cases have no application here.

■ Appellants maintain that the instruction on damages was erroneous in permitting the jury to award damages for physical pain and suffering and impairment of health, when there was no evidence of any such pain, suffering or impairment.

The only evidence for the plaintiff, on the question of damages, was that he was confined to jail for three days and nights, over the New Year's holiday. The instruction authorized recovery for physical pain and suffering, impairment of health, mental pain and suffering, mortification or humiliation, and damage to reputation or character, "if any." The instruction was erroneous, but it does not follow necessarily that the error was prejudicial. In order for the error in the instruction to be prejudicial, the verdict must have given some reflection of the erroneous part of the instruction. We have held that an instruction on permanent injuries, not warranted by the evidence, was not prejudicial where the verdict did not reflect a consideration of the permanent injury instruction. Coca Cola Bottling Co. v. Creech, 245 Ky. 414, 53 S.W.2d 745; Combs v. Stewart, 301 Ky. 50, 190 S.W.2d 861. Similarly, an erroneous instruction on punitive damages has been held not prejudicial where the verdict did not exceed a reasonable allowance for compensatory damages. Perks & Higgins v. McCracken, 169 Ky. 590, 184 S.W. 891; St. Bernard Mining Co. v. Ashby, 164 Ky. 416, 175 S.W. 626.

■ Here, the verdict was for $1,000. This is not an excessive allowance for the mental pain and suffering, mortification, humiliation, and loss of freedom resulting from wrongful confinement in jail for three days and nights, over the New Year's holiday. The verdict does not reflect any consideration of the erroneous part of the instruction, as to physical pain, suffering, and impairment of health.

■ Appellants' final contention is that the court erred in refusing to give their offered instruction No. 9, which stated in effect that if the jury believed that the plaintiff removed the automobile from the garage of the Smith Motor Sales, or aided or abetted another in so doing, he was guilty of violating KRS 434.210, and the law was for the defendants. As we have pointed out at an earlier point in this opinion, this instruction did not correctly state the law; therefore, the court properly refused to give it.

The judgment is affirmed.