105 P.2d 494

**HUGHES v. VAN BRUGGEN.**

**No. 4439.**

Supreme Court of New Mexico.

Sept. 3, 1940.

F. S. Merriau and Fred C. Stringfellow, both of Raton, for appellant.

· Robert A. Morrow, of Raton, and Kiker & Sanchez and Anthony J. Albert, all of Santa Fe, for appellee.

PER CURIAM.

Upon consideration of motion for rehearing, the original opinion has been withdrawn and the following substituted therefor.

MABRY, Justice.

Plaintiff and appellee, Hughes, was prosecuted in the District Court of Colfax County upon the charge of theft of a bull rake belonging to defendant and appellant, Van Bruggen. The accused had theretofore been arrested upon a warrant issuing from a Justice of the Peace court and upon complaint signed by defendant. Plaintiff, as defendant in the criminal action, waived preliminary examination and was regularly bound over to await the action of the District Court, in which court he was thereafter, upon instructed verdict, acquitted. Thereafter suit was filed seeking damages from defendant for malicious prosecution. This suit resulted in a verdict of $2,500 in favor of plaintiff, and this appeal is from such verdict and judgment.

Motion for directed verdict made at close of plaintiff's case was erroneously overruled. Thereafter defendant put on his case and it is upon defendant's evidence that plaintiff would now largely rely.

The important question here presented is whether or not the criminal proceedings were in fact initiated by the defendant: Another is whether there be, in any event, evidence, to sustain the verdict and judgment on the theory that the criminal prosecution was without probable cause and was

actuated by malice, two essential requisites.

The facts, including all inferences reasonably to be drawn therefrom in support of plaintiff, are:

The sheriff and two of his deputies passed by the country store of defendant on their way out to the farm home of the brother of plaintiff, who was well known to defendant, to investigate complaints of other thefts charged to the brother. They advised defendant of the nature of their mission and defendant told them that he had lost one of his farm implements, a bull rake, and that while they were there they might look for it. The officers returned later and announced that the bull rake, dismantled and somewhat concealed, had been found upon the premises they had searched, and that in addition, one Jack Howard, an associate of plaintiff Hughes, also known to defendant, had confessed to them that he and plaintiff together had stolen the rake of defendant, dismantled and placed it where the officers found it. The officers asked defendant if he would come in and sign a complaint against plaintiff if this were his rake. Defendant said he would. The officers then continued on their way, returning to Raton, reporting to the District Attorney upon their general investigation and particularly as to the finding of the bull rake which Howard had said belonged to defendant. Soon thereafter the District Attorney prepared a criminal complaint against plaintiff, charging theft of the rake and took or sent it to the office of

a Justice of the Peace, and some one from the Sheriff's office phoned to defendant that he should come in and sign the complaint.

Defendant said he did not believe it necessary to talk to the District Attorney; that the Sheriff or his deputies had told him, in addition to that which the District Attorney is quoted as having said, that they "had plenty of evidence to make the complaint on, and they were instructed by the District Attorney's office to make this complaint."

We search the record thoroughly and determine that it discloses no 'evidence to show that defendant himself initiated the action or that he advised or counselled with the District Attorney or any other person suggesting, even, that there should be a prosecution.

Much is made of the statement of defendant appearing once or twice in the record in explanation of why he did not consult the District Attorney directly, giving him the facts after positively identifying the rake as his own if he could, to the effect that he was simply acting upon *instructions* "of" or "from" the sheriff's office. Plaintiff urges that the evidence supports their theory that defendant was counselling and advising with the sheriff's office upon which counsel and advice he had no legal right to rely, rather than upon that of the District Attorney which, had he made fair and honest disclosures of the facts, would have afforded him a complete defense.

■ The record does not support plaintiff's contention in this respect. All the evidence, including all reasonable inferences that may be drawn therefrom in aid of plaintiff's case, clearly shows that defendant relied not upon the *counsel* or *advice* of the sheriff, but that he relied upon his *instructions* only, and these he assumed to have been relayed from the office of the District Attorney, as they were in fact.

Plaintiff confuses the word "advice" with the word "instruction". There is a distinction between the two words. "Advice" means legal counsel. *Instructions* and *Directions* are synonymous. (See English's Law Dictionary.) To "instruct" carries an implication that it is to be obeyed, while "advice" means it is optional with the person addressed whether he will act on such advice or not. See State v. Downing, 23 Idaho 540, 130 P. 461.

"Advise—to give advice; to counsel; Long v. State, 23 Neb. 33, 36 N.W. 310. It is different in meaning from *instruct;* People v. Horn, 70 Cal. 17, 11 P. 470; or' *persuade;* Wilson v. State, 38 Ala. 411." Bouvier's Law Dictionary, Volume 1, Page 155. (Emphasis ours)

It is not difficult to appraise defendant's statements that he "acted on instructions from the sheriff's office" as meaning simply that if his contemplated action in signing the complaint was upon *direction* of the District Attorney, about whose opinion upon the matter he had first inquired before signing, he would sign it.

■ It would be difficult to give the statements any other meaning in view of the lack of any showing of the least initiative on the part of defendant, and particularly in view of the information conveyed to defendant by the sheriff's office that the District Attorney had said that he (the District Attorney) had enough on the Hughes boys (meaning the defendant and his brother) to send them to the penitentiary for thirty-five years, and that "they had plenty of evidence to make the complaint on and were instructed by the District Attorney's office to make this complaint."

"Where a private person gives to a prosecuting officer information which he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informant is not liable under the rule stated in this section, even though the information proves to be false, and his belief therein was one which a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings. * * *

"In order to charge a private person with responsibility for the initiating of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated expressed by direction, request, or pressure of any kind was the determining factor in the official's decision to

commence the prosecution or that the information furnished by him upon which official acted was *known to be false.*" (Emphasis ours). Restatement of the Law of Torts, Par. 653, Subsec. g.

See also same section at pages 382–384 for further and helpful discussion of what constitutes "initiating" criminal proceedings.

It cannot detract from the rule as above so clearly stated to say that the informant may himself even sign the complaint which puts in motion the prosecution. We know that under our practice any one may sign a criminal complaint, upon information and belief, if not upon his own knowledge. We know that as a practical matter, many times complaints are signed by peace officers or members of the prosecutor's staff who have no actual knowledge of the crime. Often the person who claims to have been the victim of the offender is asked to sign the complaint. This adds nothing to the efficacy of the prosecution certainly, but it is done in many cases, perhaps, in order to enlist the interest and cooperation of the person most likely able to give testimony in behalf of the state, and whose testimony in many such cases may be indispensable.

In this case, defendant signed upon direction of the District Attorney, we must hold, though he never talked directly with such officer.

■ Some point is made by plaintiff of the fact that defendant was not careful to make investigation to ascertain whether the rake found was in fact his own. It seems that the fact that defendant was not able to exactly identify the rake as his own was largely the ground for the directed verdict in the criminal case. It is enough to point out, in answer to this contention, that the sheriff reported to both the District Attorney and defendant the finding of the rake and a confession from one Howard that he and the plaintiff Hughes had themselves stolen and secreted the same. Defendant knew that Howard had many times seen and could identify the rake. He had no reason to presume an inadequate investigation had been made by the sheriff and the District Attorney when the latter officer ordered the prosecution.

Had defendant been recommending or urging the prosecution he could not have been excused, perhaps, from the further duty of going to see and identify the implement alleged to have been stolen. He understood that identification had been completed by one who knew it and who, it would certainly appear, would have no reason to implicate himself in a theft for which he was not chargeable. The fact that the informant, Jack Howard, was known to bear a bad reputation and to have been already involved in other thefts and law violations, could not have detracted from the value of his confession of the theft in that substantial measure which plaintiff urges; though, had defendant instigated the proceedings himself, he would perhaps have been held to a higher and further duty of seeking corroboration of

Howard's statement—in some reasonable manner of fairly determining its reliability.

Another distinction is to be noted which counsel for plaintiff seems to overlook. As is said in Restatement of the Law of Torts, Sec. 602 (g) at page 407:

"In one respect, belief based upon supposed personal knowledge and belief based upon information are differently treated. Where the accusation is based upon information given by a third person, the only important matter is the reliability of the informant. It is immaterial that the informant was himself unreasonably mistaken; whereas an unreasonable mistake on the part of the accuser may subject him to liability. Thus where the accuser bases his charge upon a third person's identification of the accused, it is immaterial that the informant acted unreasonably in making the identification. On the other hand, if the accuser had made a similar mistake, he would not have had probable cause for the initiation of criminal proceedings."

There can be no liability where the prosecuting officer relies upon his own investigation and upon information furnished by others than defendant or where defendant has himself fairly disclosed, and it is left to the officer's own discretion, judgment and responsibility as to whether there shall be a prosecution. See 38 C.J. 398, Par. 25; Christy v. Rice, 152 Mich. 563, 116 N.W. 200; Cox v. Lauritsen, 126 Minn. 128, 147 N.W. 1093; Malloy v. Chicago etc. Ry. Co., 34 S.D. 330, 148 N.W. 598.

If we are to have prosecutions of law violations only at the very great hazard of unreasonably subjecting the complaining witness to the expensive ordeal and uncertain results of suits for damages if convictions not be obtained, we then approve a rule which thwarts justice upon the very threshold of its entrance. Few men would take the chance and invite such a suit, even though they would otherwise be boldened to advocate and uphold law and order. Their attitude could very properly be, "let the other fellow do it." The policy of the law is not, as it should not be, unreasonably to deter those who know of breaches of the law from complaining against the offenders.

It was pointed out by Lord Holt more than two centuries ago that such actions "ought not to be favored, but managed with great caution." As one text writer has put it:

"Their tendency is to discourage prosecution for crime, as they expose prosecutors to civil suits, and the love of justice may not always be strong enough to induce individuals to commence prosecutions, when, if they fail, they may be subjected to the expense of litigation, if they be not mulcted in damages." Newell on Mal. Pros., pars. 13–15.

Chief Justice Shaw, speaking in the early case of Cloon v. Gerry, 13 Gray, Mass., 201, said:

"This kind of suit, by which the complainant in a criminal prosecution is made liable to an action for damages, at the suit

of the person complained of, is not to be favored; it has a tendency to deter men who know of breaches of the law, from prosecuting offenders, thereby endangering the order and peace of the community."

The policy of the law in this respect has not changed through the centuries. We have like expressions and find like support for such a policy in the cases down through the years and to the very present time. For example, it was said in the very recent case of Figuccion v. Prudential Ins. Co. of America, 1938, 273 Ky. 287, 116 S.W.2d 291, 292, "The law does not look with favor upon suits for damages for malicious prosecution." And the same year, a court of a neighboring state had an occasion to approve this century old rule with this language (of the syllabus):

"The adoption of lax rules favorable to actions for malicious prosecutions is not the policy of the courts." Williams v. Frey, 182 Okl. 556, 78 P.2d 1052.

We cited with approval in Delgado v. Rivera, 40 N.M. 217, 57 P.2d 1141, 1148, the following statement of the law:

"To support an action for malicious criminal prosecution the plaintiff must prove, in the first place, the fact of prosecution, and that *defendant was himself the prosecutor or that he instigated its commencement* and that it finally terminated in his acquittal * * * that the charge preferred against him was unfounded, and that it was made without reasonable or probable cause, and that the defendant in making or instigating it was actuated by malice." (Emphasis ours)

When we determine that defendant did not "instigate" the criminal proceedings, as we do, our inquiry is then substantially limited to the very narrow field of ascertaining whether defendant gave facts which he knew to be false, or whether he collaborated with others · in directing or urging the prosecution. It is not enough that there be mere passive knowledge of the prosecution on defendant's part, or acquiescence in or consent to the proceedings. See Fertitta v. Herndon, Md., 3 A.2d 502, 120 A.L.R. 1317, for recent cases upon the point. And it is not enough that he himself signed the complaint under the circumstances here present. Dickson v. Young, 208 Iowa 1, 221 N.W. 820.

" 'Instigate' means 'to stimulate or goad to an action, especially a bad action.' * * * One of its synonyms is 'abet' ". State v. Fraker, 148 Mo. 143, 49 S.W. 1017, 1022.

The better rule is that even when initiating or participating in a criminal prosecution, the defendant,. as informant, is required only to fairly disclose all the facts within his knowledge, and not all the facts which by the use of ordinary diligence should have been known to him. Williams v. Frey, supra.

It cannot be gathered from any of the evidence by any fair and reasonable construction, that defendant knowingly

gave false information, or withheld any helpful information upon the subject.

The circumstances, which we need not here discuss, relied upon by plaintiff to show malice, we regard as of quite doubtful efficacy for the purpose. But, assuming they are sufficient there still remains the other prerequisite, lack of probable cause.

While in this character of action, malice may be inferred from want of probable cause, proof of probable cause is a complete defense notwithstanding the element of malice may be present. See Delgado v. Rivera, supra. 38 C.J. 400, Sec. 26 and 27, citing numerous cases.

We know that what facts or circumstances amount to probable cause is a question of law for the court. Haydel v. Morton, 28 Cal.App.2d 383, 82 P.2d 623; 18 R.C.L. 58.

Other questions presented need not be considered in view of our disposition of this principal one. There is no evidence to support a verdict, and timely motions of defendant, made in reliance upon such fact, should have been granted. The cause will be reversed with direction to set aside the former verdict and judgment and grant judgment for defendant. It is so ordered.

BICKLEY, C. J., and BRICE and ZINN, JJ., concur.

SADLER, J., did not participate.