747 P.2d 923

**Adolfo E. ZAMORA and Adeline C. Zamora, Plaintiffs-Appellants,**

**v.**

**CREAMLAND DAIRIES, INC., a New Mexico corporation, and Professional Security Service, Inc., et al., Defendants–Appellees.**

**Nos. 8977, 9014 and 9774.**

Court of Appeals of New Mexico.

Dec. 1, 1987.

Philip C. Gaddy, Leon Taylor, Law Offices of Leon Taylor, Albuquerque, for plaintiffs-appellants.

Michael J. Condon, Jackson G. Akin, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendant-appellee Creamland Dairies, Inc.

**630**

John Klecan, Sylvia T. Hendren, Butt, Thornton and Baehr, P.C., Albuquerque, for defendants-appellees Professional Sec. Service, Inc. and Phillip A. Caristo.

## OPINION

APODACA, Judge.

Plaintiffs Adolfo E. Zamora (Zamora) and Adeline C. Zamora (Zamora's wife) appeal the granting of summary judgment to all defendants. We hold summary judgment was proper and affirm the trial court.

## PROCEEDINGS BELOW

Two of these appeals arise from a complaint filed against Creamland Dairies, Inc. (Creamland) and the other is from a claim against Professional Security Service, Inc. (PSS) and Phillip A. Caristo (Caristo) arising from the same facts.

Zamora filed suit against Creamland alleging (1) malicious prosecution; (2) abuse of process; and (3) negligence. Creamland responded with a motion for summary judgment. The trial court granted the motion on the claim of malicious prosecution and took the motion under advisement on the other claims. Zamora appealed this judgment in Cause No. 8977. Subsequently, summary judgment was entered on all counts. This was also appealed and became Cause No. 9014.

Meanwhile, Zamora filed a complaint against PSS and Caristo (the PSS suit), alleging (1) malicious prosecution; (2) abuse of process; (3) false imprisonment; (4) slander and defamation; (5) negligence; (6) negligent hiring; and (7) negligent infliction of emotional distress. PSS and Caristo moved for summary judgment. After a hearing on the motion, Zamora submitted additional depositions to the trial court.

In the PSS suit, after the trial court wrote to the parties proposing to grant summary judgment to defendants, Zamora filed a motion to reconsider the proposed disposition, citing to the additional depositions he had submitted. The trial court issued a second letter denying the motion to reconsider and summary judgment was entered for defendants. Appeal from this

judgment is Cause No. 9774. We granted Zamora's motions to consolidate the three appeals.

## FACTS

In February 1983, Creamland received information that its milk was being sold out of a private residence in Albuquerque without Creamland's knowledge or any authorized wholesale milk deliveries having been made. Creamland's manager, Dale Finch (Finch), contacted PSS, a private investigation firm, and requested an investigation of the facts surrounding the alleged sales. Caristo undertook the investigation for PSS.

Caristo conducted surveillance of the house from which the sales were allegedly made and identified its owners as Herman and Ruby Sanchez. Caristo observed various individuals apparently purchasing milk from the Sanchez residence at different times. He also observed Zamora, who was a route driver for Creamland, loading ten cases of Creamland milk into a pickup truck driven by Ruby Sanchez in a lot behind Eddie's Market. He further identified Zamora as the driver that unloaded cases of milk in the driveway of the Sanchez residence. Caristo prepared a report of his investigation, accompanied by photographs implicating Zamora. Meanwhile, Finch was also told by another Creamland employee that Zamora had been improperly disposing of Creamland products.

Finch confronted Zamora with these allegations and asked him to take a stress analyzer test. The test indicated Zamora was not being truthful. Finch then asked Caristo to turn over the investigation results to law enforcement officials.

Caristo contacted Santos Baca (Baca), Chief of Investigations for the Second Judicial District Attorney's Office. Baca informed Caristo that, before the district attorney's office could act, Caristo would have to report the matter to the Albuquerque Police Department. Caristo did so by filing an "Offense and Incident Report" with the police. At Baca's request, Caristo prepared a summary of the investigation he had done for PSS and submitted it to

Baca. Baca then conducted his own investigation, during which he took statements from several persons, including PSS employees and several employees of Creamland.

Based on Baca's investigation, assistant district attorney Joe Lally (Lally) decided to bring the case before the grand jury. Indictments were returned against Zamora and against Herman and Ruby Sanchez for embezzlement, or in the alternative, larceny, and for conspiracy to commit embezzlement, or in the alternative, conspiracy to commit larceny. Herman and Ruby Sanchez pled guilty to conspiracy to commit larceny and the remainder of the charges against them were dismissed. Zamora was tried by a jury. At the close of the state's case, the trial court directed a verdict in Zamora's favor. Delivery of Caristo's report to the district attorney's office and Zamora's indictment and acquittal formed the basis for his claims of malicious prosecution against all defendants.

## ISSUES ON APPEAL

We discuss: (1) the preliminary issue of whether depositions filed after the hearing on the motion for summary judgment may be considered on appeal; (2) whether the trial court erred in granting summary judgment to defendants on the malicious prosecution claims; and (3) generally, the remaining claims in Zamora's complaints.

## Whether Depositions Filed After the Hearing on Summary Judgment May be Considered

After the hearing on summary judgment, Zamora submitted additional depositions to the trial court, apparently in anticipation of the case going to trial. These depositions were not made part of the record proper on appeal, nor is there any indication they were ever admitted as exhibits in the trial court. They were, however, sent to this court with the record on appeal. It is not clear whether the trial court considered this evidence before granting summary judgment to defendants. It may be that because the depositions were not before the trial court at the time of the hearing on summary judgment, they should not be considered by this court on appeal. *See*

*Schmidt v. St. Joseph's Hosp.*, 105 N.M. 681, 736 P.2d 135 (Ct.App.1987). However, we need not decide this issue, because we have reviewed the depositions and conclude that, in any event, they do not establish the existence of a genuine issue of material fact and would not alter this appeal's disposition.

## Whether the Trial Court Erred in Granting Summary Judgment on the Malicious Prosecution Claims.

Under this issue, Zamora raises identical contentions against all defendants:

(1) Whether affidavits submitted by defendants in support of their motions for summary judgment should have been stricken in whole or in part;

(2) Whether defendants made a prima facie showing of entitlement to summary judgment; and

(3) If defendants did make a prima facie showing, whether it was overcome by Zamora's proof that there existed genuine issues of material fact.

We discuss each of these contentions separately.

## (1) Whether Defendants' Affidavits Should Have Been Stricken

■ SCRA 1986, 1–056(E) states in part: "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Zamora argues the affidavits filed by Finch should be stricken because they are based on hearsay. Finch testified on matters that he had been told during the course of his investigation by an informant, by employees of Creamland, and by Caristo. However, Zamora overlooks the fact that these statements were not introduced to prove the truth of the matter asserted, that is, that Zamora had engaged in the conduct reported to Finch. Rather, they were introduced to show that Finch had probable cause to believe Zamora had committed criminal acts and therefore acted reasonably in directing Caristo to report the investigation

results to authorities. Finch's statements, therefore, were not hearsay. *See* SCRA 1986, 11–801(C). Further, even hearsay evidence may be used to establish probable cause. *Seelig v. Harvard Coop. Soc'y*, 355 Mass. 532, 246 N.E.2d 642 (1969). *See State v. Deltenre*, 77 N.M. 497, 424 P.2d 782 (1966), *cert. denied*, 386 U.S. 976, 87 S.Ct. 1171, 18 L.Ed.2d 136 (1967).

■ Zamora also contends Caristo's affidavit does not meet the requirements of Rule 1–056(E). He objects to Caristo's statements that he acted honestly and in good faith, that he had no ulterior motive, and that he believed he had probable cause to report the matter. Zamora alleges these claims are self-serving and conclusory and lack a factual base. However, the affidavit contains numerous facts upon which Caristo based his good faith belief that Zamora was engaged in criminal activity.

■ Zamora next argues that the affidavits of Baca and Lally should be stricken because they rendered expert opinion in that they testified based on their training and experience. We disagree. Neither Baca nor Lally was qualified as an expert witness in the trial court. Besides, the issue was not whether they believed Caristo and Creamland had probable cause to make a report to them, but whether, based upon the information given to them and their own independent investigation, they made an independent decision to submit the case to the grand jury.

We conclude the trial court properly considered the affidavits submitted by defendants in support of their respective motions for summary judgment.

### (2) Whether Defendants Made a Prima Facie Showing That They Were Entitled to Summary Judgment

■ In order to state a claim for malicious prosecution, a plaintiff must prove that: (1) defendant initiated, or procured the institution of, criminal proceedings against plaintiff without probable cause; (2) the proceedings were initiated primarily for a purpose other than that of bringing an offender to justice; and (3) the proceedings have terminated in favor of the accused. Restatement (Second) of Torts § 653 (1977). *See Hughes v. Van Bruggen*, 44 N.M. 534, 105 P.2d 494 (1940).

There is no question here that the third element has been met. Because we find that defendants established they did not initiate criminal proceedings against Zamora, we do not reach the issues of probable cause and malice.

■ Criminal proceedings are instituted when: (1) process is issued; (2) an indictment is returned or information filed; or (3) there is a lawful arrest on a criminal charge. Restatement (Second) of Torts § 654 (1977). If a private person gives a prosecutor information he believes to be true, and the officer, in the exercise of his uncontrolled discretion, initiates proceedings based on that information, the informer is not liable. *Id.* "There can be no liability where the prosecuting officer relies upon his own investigation and upon information furnished by others than defendant or where defendant has himself fairly disclosed, and it is left to the officer's own discretion, judgment and responsibility as to whether there shall be a prosecution." *Hughes v. Van Bruggen*, 44 N.M. at 540, 105 P.2d at 498.

■ Finch stated he requested Caristo to turn over the results of his investigation to the appropriate law enforcement agency. Caristo turned over his investigation file to Baca, the investigator at the district attorney's office. Baca informed him that the district attorney's office could take no action unless the matter was first reported to the Albuquerque Police Department, and Caristo then filed an "Offense and Incident Report" with the police. Also at Baca's request, Caristo prepared a report summarizing his investigation.

Baca's affidavits indicate that, after receiving the report from Caristo, he conducted his own independent investigation on behalf of the district attorney's office. As part of this investigation, he took written statements from four people and interviewed eight others. After completing his investigation, Baca submitted a report, together with information that he had re-

ceived from Caristo, to an assistant district attorney for a determination of whether there was sufficient evidence to bring charges against Zamora, Herman Sanchez and Ruby Sanchez. Baca's report, which is six single-spaced typewritten pages, was attached to his affidavit.

Lally said in his affidavit that he reviewed Baca's report and also conferred with Baca about the case. He also testified that the district attorney's office used a confidential informant in connection with the case, and it was the decision of the district attorney's office that there was probable cause to bring the case before the grand jury. Lally stated that the decision was made solely by the district attorney's office, without any encouragement, recommendation, direction, or pressure of any kind from the defendants.

A defendant cannot be held liable for malicious prosecution unless he took some active part in instigating or encouraging prosecution. W.P. Keeton, *Prosser & Keeton on the Law of Torts* § 119 (5th ed. 1984) (citing *Wood v. Palmer Ford, Inc.*, 47 Md.App. 692, 425 A.2d 671 (1981)); *Schleicher v. Western State Bank*, 314 N.W.2d 293 (N.D.1982). The mere act of calling the police does not rise to the level of instituting criminal proceedings. *Ziemba v. Fo'cs'le, Inc.*, 19 Mass.App. 484, 475 N.E.2d 1223 (1985).

> "In order to charge a private person with responsibility for the initiating of proceedings by a public official, it must therefore appear *that his desire to have the proceedings initiated* expressed by direction, request, or pressure of any kind *was the determining factor in the official's decision to commence the prosecution* or that the information furnished by him upon which the official acted was *known to be false.*"

*Hughes v. Van Bruggen*, 44 N.M. at 538–39, 105 P.2d at 497 (quoting Restatement of Torts § 653, comment g (emphasis added).

The affidavits of Finch, Caristo, Baca, and Lally established that Caristo simply submitted a copy of his report to the district attorney's office for possible further investigation. This he was authorized to do under NMSA 1978, Section 61–27–25(A) (Repl.Pamp.1983). The report Caristo filed with the Albuquerque Police Department was done at Baca's suggestion and does not name Zamora or any other suspect. Baca and Lally then made consecutive determinations, first to proceed with a separate investigation, and then to submit the case to the grand jury.

Under these facts, we conclude it was not error for the trial court to determine defendants had made a prima facie showing that they did not institute criminal proceedings against Zamora. *See Renda v. International Union, United A.A. & A.I. Workers*, 366 Mich. 58, 114 N.W.2d 343 (1962) (at common law, a person who supplies information to a prosecutor concerning persons possibly implicated in a crime is not himself the prosecutor, unless he knows the information he is supplying to be false or unless he exerts improper influence upon the prosecuting authorities); *Koski v. Vohs*, 137 Mich.App. 491, 358 N.W.2d 620 (1984), *rev'd on other grounds*, 426 Mich. 424, 395 N.W.2d 226 (1986) (even where officer's incident report made something less than full disclosure to prosecutor, his actions do not constitute causing a prosecution because the prosecutor conducted an independent investigation and decided to seek prosecution based on his own findings); *Seelig v. Harvard Coop. Soc'y* (where defendant does no more than narrate the material facts to the officer and leaves him to decide what he will do, defendant not liable for actions of officers); *Wykle v. Valley Fidelity Bank & Trust Co.*, 658 S.W.2d 96, 98 (Tenn.App.1983) ("[w]hile it is not necessary that a person actually swear out the warrant to be liable, something more than merely giving information must be shown"); *Malloy v. Chicago, M. & St. P. Ry.*, 34 S.D. 330, 148 N.W. 598 (1914) (where, after defendant's agent had disclosed to a prosecuting attorney acts justifying a belief plaintiff was guilty of theft, the prosecutor instituted an independent investigation, and, finding the facts to be as he had been informed, advised defendant's agent to sign complaint

against plaintiff, defendant was not liable for malicious prosecution).

### (3) Whether Zamora Established the Existence of Genuine Issues of Material Fact

Once defendants made a prima facie showing that they were entitled to summary judgment, the burden shifted to Zamora to show the existence of a genuine issue of material fact. *Goodman v. Brock,* 83 N.M. 789, 498 P.2d 676 (1972). All doubt regarding the existence of an issue of material fact does not have to be resolved in order for summary judgment to be appropriate. *Koenig v. Perez,* 104 N.M. 664, 726 P.2d 341 (1986).

In opposing Creamland's motion for summary judgment, Zamora submitted his own affidavit, an affidavit by Dave Richardson, a private investigator, and testimony transcripts of Finch and Caristo in the criminal trial. He argued that Creamland instituted proceedings against him because it "filed or caused to be filed" a complaint with the district attorney's office and police department. Because malicious prosecution is an action disfavored by the law, Zamora has a heavy burden in establishing his claim. *See Koski v. Vohs; Reed v. Lindley,* 240 S.W. 348 (Tex.Civ.App.1922). Zamora has failed to overcome defendant's showing that the district attorney's office conducted an independent investigation and made its own decision to take the case to the grand jury without any encouragement or pressure from defendants. Accepting Zamora's argument would discourage citizens from making good faith reports of suspected criminal activity to the authorities. *See Hughes v. Van Bruggen* (this kind of suit deters those who know of breaches of the law from prosecuting offenders, thereby endangering the order and peace of the community).

██ Malicious prosecution actions are favored only in plain, compelling cases. *Koski v. Vohs.* There are valid public policy reasons for requiring some action on defendants' part beyond the mere reporting of suspected criminal activity to police in order to find that they instituted criminal proceedings. *See Reed v. Lindley* (Public

policy favors the exposure of crime); *Wingersky v. E.E. Gray Co.,* 254 Mass. 198, 201, 150 N.E. 164, 165 (1926) ("[i]t is the duty of every member of society to see to it that crime is punished so far as lies in his power"). The law acknowledges that a person wrongly charged with a crime has an important stake in his freedom and his reputation, but the community as a whole has an even more important stake in encouraging private citizens to assist officers in enforcing the law. *McHale v. W.B.S. Corp.,* 187 Conn. 444, 446 A.2d 815 (1982). It is thus necessary to give citizens wide latitude in reporting facts to authorities so as not to discourage the exposure of crime. *Thomas v. Cisneros,* 596 S.W.2d 313 (Tex. Civ.App.1980).

██ Alternatively, Zamora argues that the authorities' action cannot shield defendants from liability because the information they gave to the district attorney was false, incomplete or misleading. *See Hirth v. Hall,* 96 N.M. 58, 627 P.2d 1257 (Ct.App. 1981). Zamora's contention appears to be that Caristo gave false information because he identified Zamora as being present at certain places where Zamora denies having been present. There is no evidence, however, that Caristo reported anything other than what he believed he saw. A citizen, without fear of liability, may report information to the authorities upon mere suspicion. *Renda v. International Union, United A.A. & A.I. Workers.* Efficient law enforcement requires that a private person who aids the police by giving honest, even if mistaken, information about crime, should be given effective protection from civil liability. *LaFontaine v. Family Drug Stores, Inc.,* 33 Conn.Supp. 66, 360 A.2d 899 (1976). Holding a citizen liable for making an honest mistake in reporting to the police would have a chilling effect on an important source of information about crime. *Id.*

Zamora next argues that the information was incomplete and misleading because Caristo should have: (1) conducted a more extensive investigation into Creamland's waste product procedures; (2) included that information in his report; and (3) informed

the district attorney of Zamora's allegations that all the milk he was delivering to the Sanchez' was dump milk. The failure to follow other possible leads, however, does not create an issue of fact in the absence of a demonstration that Caristo knew of exculpatory information and that he withheld it from the district attorney. *See Coogan v. City of Wixom,* 820 F.2d 170 (6th Cir.1987). The gist of Zamora's argument is that his explanations were not made part of Caristo's report; however, Caristo was reporting what he had observed and Zamora points to no evidence omitted from the report that supports his claims. Besides, Baca testified Caristo informed him of Zamora's explanations, and Lally testified he was aware of them. Zamora has not established that there is a genuine issue of fact as to whether Caristo withheld or falsified information.

Zamora has not pointed to any evidence showing a genuine issue of material fact that would lead us to conclude the trial court erred in granting summary judgment to defendants on the malicious prosecution claims.

**The Remaining Claims in Zamora's Complaints**

On appeal, Zamora has failed to specifically state the nature of any claim of error in the trial court's granting of summary judgment on his other claims, or to support the claims with points and authorities in his brief in chief. *See In re Adoption of Doe,* 100 N.M. 764, 676 P.2d 1329 (1984); *Perez v. Gallegos,* 87 N.M. 161, 530 P.2d 1155 (1974). Although the issues are deemed abandoned, *see In re Adoption of Doe,* we recognize the preference for determining causes on their merits. *See Danzer v. Professional Insurors, Inc.,* 101 N.M. 178, 679 P.2d 1276 (1984). Thus, we briefly address Zamora's other claims.

**(1) Abuse of Process**

 Abuse of process occurs when one uses a legal process, civil or criminal, against another, primarily to accomplish a purpose for which it is not designed. Restatement (Second) of Torts § 682 (1977). There must be a use of the process for an immediate purpose other than that for which it was designed or intended. There is no liability where defendant has done nothing more than carry out the process to its authorized conclusion, even with bad intentions. W.P. Keeton, *supra,* § 121.

 New Mexico case law requires three elements for an abuse of process claim: (1) the existence of an ulterior motive; (2) an act in the use of process which would not be proper in the regular prosecution of the charge; and (3) the plaintiff must suffer damages (there must be an unlawful interference with the plaintiff's person or property). *Farmers Gin Co. v. Ward,* 73 N.M. 405, 389 P.2d 9 (1964); *Hirth v. Hall; Hertz Corp. v. Paloni,* 95 N.M. 212, 619 P.2d 1256 (Ct.App.1980). Zamora's complaint did not allege an ulterior motive on the part of defendants, and there is no allegation that defendants committed any act in the use of process that would not have been proper in prosecuting a claim for larceny.

**(2) Negligence**

 Zamora's complaints include negligence, negligent investigation, and negligent hiring. Negligence has not been addressed separately, but rather, as part of Zamora's argument in his malicious prosecution claim, that is, that defendants should not be shielded from their acts because they were negligent in not giving complete information to the district attorney. Even if Zamora had shown defendants omitted information, to allow an action in negligence against a citizen who makes an honest mistake in reporting to the police would stifle citizen cooperation. *LaFontaine v. Family Drug Stores, Inc.* We conclude Zamora has not stated a separate claim for negligence.

**(3) False Imprisonment, Slander, Defamation**

Zamora has not pointed to any facts whatsoever to support the false imprisonment or slander and defamation counts, and we have not uncovered any.

### (4) Negligent Infliction of Emotional Distress

 This claim was brought on behalf of Zamora's wife on the theory that she suffered emotional distress as a result of watching her husband tried on a criminal charge.

This tort, which occurs when a plaintiff witnesses an accident to a close family member, was recognized in New Mexico in *Ramirez v. Armstrong,* 100 N.M. 538, 673 P.2d 822 (1983). Under *Ramirez,* the shock to a plaintiff must be severe and result from a direct emotional impact on plaintiff caused by the contemporaneous sensory perception of the accident. There must also be some physical manifestation of, or physical injury to the plaintiff, resulting from the injury and the accident must result in physical injury or death to the victim. *Id.* Clearly, none of these elements are present here.

### CONCLUSION

The trial court is affirmed. No costs are awarded on appeal.

IT IS SO ORDERED.

DONNELLY, C.J., and FRUMAN, J., concur.