This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-39997**

**SHAYDLE MENDOZA,**

Plaintiff-Appellee,

v.

**WAL-MART STORES EAST, L.P. and ROBERT BENCOMO,**

Defendants-Appellants,

and

**LARRY MARTA and JOHN OR JANE DOES 1-10,**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**Thomas F. Stewart, District Court Judge**

Law Office of Cynthia J. Patterson
Cynthia J. Patterson
Hurley, NM

Cardenas Law Firm, LLC
Christopher K.P. Cardenas
Las Cruces, NM

for Appellee

Lewis Brisbois Bisgaard & Smith LLP
Georgia L. Hamann
Phoenix, AZ

Rodey, Dickason, Sloan. Akin & Robb, P.A.
Edward Ricco

Albuquerque, NM

for Appellants

**MEMORANDUM OPINION**

**BACA, Judge.**

**{1}** Appellants Wal-Mart Stores East, L.P., and Robert Bencomo (collectively, Appellants) appeal from a jury verdict that awarded Appellee Shaydle Mendoza compensatory and punitive damages for claims of malicious abuse of process (MAP), intentional infliction of emotional distress (IIED), and intentional spoliation. Appellants advance three arguments: (1) they are entitled to judgment as a matter of law on Appellee's MAP, IIED, and intentional spoliation claims; (2) Appellant Bencomo's conduct did not justify an award of punitive damages; and (3) the damages award for MAP and IIED are duplicative. For the reasons set forth herein, we conclude: (1) Appellants were entitled to judgment as a matter of law on Appellee's MAP, IIED, and intentional spoliation claims; and (2) the punitive damages award on Appellee's intentional spoliation claim was improper. Based on those conclusions, we need not reach Appellants' third argument. We remand for further proceedings consistent with this opinion.

**DISCUSSION**[1]

**I.      Appellants Are Entitled to Judgment as a Matter of Law on Appellee's Claims for MAP, IIED, and Intentional Spoliation**

**{2}** At the close of Appellee's case in chief relating to events associated with her arrest for criminal trespass in the parking lot of the Silver City, New Mexico Wal-Mart, and again at the close of all evidence, Appellants moved for judgment as a matter of law on Appellee's claims for IIED, MAP, and punitive damages. The district court denied both of Appellants' motions. Appellants renewed their arguments in a posttrial motion for judgment as a matter of law as to IIED and MAP and also argued they were entitled to judgment as a matter of law on Appellee's intentional spoliation claim. Appellants' posttrial motion for judgment as a matter of law was also denied by the district court. In this appeal, Appellants continue to argue they are entitled to judgment as a matter of law on Appellee's claims for IIED, MAP, and intentional spoliation. For the reasons that follow, we agree with Appellants and conclude that Appellants were entitled to judgment as a matter of law as to Appellee's claims for IIED, MAP, and intentional spoliation.

**A.      Standard of Review**

---

[1]Because this is an unpublished memorandum opinion written solely for the benefit of the parties, *see State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361, and the parties are familiar with the factual and procedural background of this case, we omit a background section and leave the discussion of the facts for our analysis of the issues.

**{3}** "Our Supreme Court has cautioned that judgment as a matter of law is a drastic measure that is generally disfavored inasmuch as it may interfere with the jury function and intrude on a litigant's right to a trial by jury." *Am. Nat'l Prop. & Cas. Co. v. Cleveland*, 2013-NMCA-013, ¶ 7, 293 P.3d 954 (internal quotation marks and citation omitted). To grant judgment as a matter of law, the court must find that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Rule 1-050(A)(1) NMRA. Said another way, judgment as a matter of law is proper when there is "no substantial evidence supporting one or more essential elements of the case." *Klopp v. Wackenhut Corp.*, 1992-NMSC-008, ¶ 3, 113 N.M. 153, 824 P.2d 293; *Collado v. Fiesta Park Healthcare, LLC*, 2023-NMCA-014, ¶ 9, 525 P.3d 378 ("A motion for [judgment as a matter of law] is an objection to the sufficiency of the evidence to support the jury's verdict." (internal quotation marks and citation omitted)).

**{4}** "In reviewing whether a [judgment as a matter of law is] appropriate, we consider all evidence that has been properly admitted at trial, as well as all reasonable inferences deducible therefrom, resolving any conflicts or contradictions in the evidence in a light most favorable to the party resisting the motion." *McNeill v. Rice Eng'g & Operating, Inc.*, 2003-NMCA-078, ¶ 31, 133 N.M. 804, 70 P.3d 794. "We review de novo the question [of] whether sufficient evidence exists as a matter of law to justify a verdict in one party's favor." *Id.*

## B.	Malicious Abuse of Process

**{5}** To sustain a claim for MAP, a plaintiff must prove three elements: "(1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *Durham v. Guest*, 2009-NMSC-007, ¶ 29, 145 N.M. 694, 204 P.3d 19. The first element—misuse of process, also known as improper use of process—can be shown in one of two ways: "(1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment, or other conduct formerly actionable under the tort of abuse of process." *Id.* (alteration, internal quotation marks, and citation omitted); *Fleetwood Retail Corp. of N.M. v. LeDoux*, 2007-NMSC-047, ¶ 12, 142 N.M. 150, 164 P.3d 31. As shown below, the jury instructions make it clear that Appellee proceeded only on the first theory—lack of probable cause. *See Haaland v. Baltzley*, 1990-NMSC-086, ¶ 14, 110 N.M. 585, 798 P.2d 186 (noting that "the theory of the case as submitted to the jury under jury instructions, [becomes] the law of the case, binding upon the parties to the controversy").

**{6}** "Probable cause in the [MAP] context is defined as a reasonable belief, founded on known facts established after a reasonable pre[]filing investigation that a claim can be established to the satisfaction of a court or jury." *Fleetwood Retail Corp. of N.M.*, 2007-NMSC-047, ¶ 13 (internal quotation marks and citation omitted). "The lack of probable cause must be manifest." *Id.* (internal quotation marks and citation omitted). "The existence of probable cause in the underlying proceeding, that is, whether the facts amount to probable cause, is a question of law and shall be decided by the trial

judge." *Id.* (alteration, internal quotation marks, and citation omitted). "[T]he malicious abuse of process tort is disfavored in the law because of the potential chilling effect on the right of access to the courts." *Id.* ¶ 19 (alteration, internal quotation marks, and citation omitted).

**{7}** Consistent with the foregoing and UJI 13-1636 NMRA, the jury was instructed that Appellee was required to prove the following to sustain her MAP claim:

1. In a judicial proceeding, [Appellant] Bencomo actively participated in the misuse of the legal process;

2. [Appellant] Bencomo's primary motive in actively participating in misusing the legal process was to accomplish an illegitimate end[;] and[]

3. The conduct of [Appellant] Bencomo caused damages to [Appellee].

The jury was also instructed that "[a] misuse of the legal process occurs when a defendant actively participates in beginning a judicial proceeding without probable cause." UJI 13-1639 NMRA. Finally, the jury was instructed that "[p]robable cause is a reasonable belief, founded on known facts established after a reasonable pre[]filing investigation, that the claims made could be established to the satisfaction of a court or a jury." *See id.*

**{8}** Appellants challenge the sufficiency of the evidence as to the first and second elements. Because we agree with Appellants' challenge to the sufficiency of the evidence as to the first element, we do not reach Appellants' argument concerning the sufficiency of the evidence as to the second element. We explain.

**{9}** As relevant to our inquiry, the following was established by undisputed evidence presented at trial: On December 21, 2013, Appellee returned to the Silver City Wal-Mart. Appellant Bencomo recognized Appellee from a prior shoplifting stop that resulted in Appellee being issued a criminal trespass warning by the Silver City Police Department. Appellant Bencomo called the Silver City Police Department to confirm that there was still an active criminal trespass warning for Appellee. Two officers from the Silver City Police Department responded to the Silver City Wal-Mart store, and Appellee was arrested and charged with criminal trespassing. The jury did not receive any evidence suggesting that Appellant Bencomo had been advised that Appellee had been readmitted to the Silver City Wal-Mart or otherwise knew, or should have known, that the criminal trespass warning was invalid. Based on the foregoing undisputed evidence, the jury could not reasonably conclude that Appellant Bencomo actively participated in the misuse of the legal process. Accordingly, as a matter of law, we conclude that Appellant Bencomo had probable cause for his request on December 23, 2013, that Appellee be removed from the store based upon her violation of what Appellant Bencomo believed was an active criminal trespass warning.

**{10}** Arguing against that conclusion, Appellee asserts that a "reasonable investigation" required Appellant Bencomo to determine why Appellee was in the store.

Because that argument is not supported by any citation to authority, we decline to further address it. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Nor is the argument appropriately developed. For example, the record makes clear that Appellant Bencomo indeed sought clarification from the Silver City Police Department regarding the present status of the criminal trespass warning. No evidence suggests that Appellant Bencomo received information that the criminal trespass warning had been lifted, which in fact it had not, despite Appellee's claim that she spoke with a person at Appellant Wal-Mart Stores East, L.P.'s corporate headquarters to clarify whether she could return to the Silver City Wal-Mart. Indeed, nothing in the record indicates that there is anyone to whom Appellant Bencomo could have spoken with to verify that Appellee was permitted to return to the Silver City Wal-Mart without risk of arrest for criminal trespass in violation of the criminal trespass warning. While Appellee correctly notes that Appellant Bencomo should have spoken with a supervisor under the Silver City Wal-Mart policy prior to acting to enforce Appellee's violation of the criminal trespass warning, no evidence suggested that such would have altered anything given the warning remained in place. Further, no evidence was presented that Appellant Bencomo or anyone related to the Silver City Wal-Mart was privy to the contents of any conversation Appellee claims she had with Wal-Mart personnel, and Appellee's brief lacks clarity on just what Appellant Bencomo should have done beyond that, which he did in attempting to verify the current status of the criminal trespass warning. As such, this argument is undeveloped. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed.").

**{11}**    Finally, Appellee argues that "[l]ack of probable cause is not the only basis for which the jury could have found that [Appellant] Bencomo maliciously abused process against [Appellee]." As a result, Appellee asks us to affirm the jury's award based on the procedural impropriety theory of malicious abuse of process, should we conclude that Appellant Bencomo's actions were supported by probable cause. However, as we stated above, the jury instructions are clear that no such theory was submitted to the jury. Consequently, Appellee waived that theory. *See Fleetwood Retail Corp. of N.M.*, 2007-NMSC-047, ¶ 33 (stating that a failure to request the jury be instructed on an alternative theory results in waiver of that theory). We therefore conclude that Appellants were entitled to judgment as a matter of law on Appellee's MAP claim. We next consider the IIED claim.

## C.    Intentional Infliction of Emotional Distress

**{12}**    Our Supreme Court has identified four elements to an IIED claim: "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the [plaintiff]'s mental distress." *Trujillo v. N. Rio Arriba Elec. Coop., Inc.*, 2002-NMSC-004, ¶ 25, 131 N.M. 607, 41 P.3d 333 (internal quotation marks and citation omitted). Consistent with the foregoing and UJI 13-1628 NMRA, the jury was

instructed that Appellee was required to prove the following to succeed on her IIED claim:

1. [Appellant] Bencomo's conduct was extreme and outrageous;

2. [Appellant] Bencomo's conduct was intentional or in reckless disregard for [Appellee];

3. [Appellee's] mental distress was extreme and severe; [and]

4. There is a causal connection between [Appellant] Bencomo's actions and [Appellee's] distress.

The jury was further instructed that "[e]xtreme and outrageous conduct is that which goes beyond bounds of common decency and is atrocious and intolerable to the ordinary person." *Id.*; *see Trujillo*, 2002-NMSC-004, ¶ 25 (internal quotation marks and citation omitted). Here, Appellants challenge the sufficiency of the evidence as to the first and second elements. Because we agree with Appellants' argument as to the first element, we do not reach Appellants' arguments as to the second.

**{13}** The undisputed evidence received by the jury relating to December 21, 2013, was as follows: Appellant Bencomo knew that Appellee had been the subject of a previous shoplifting stop that resulted in the issuance of a criminal trespass warning. When Appellant Bencomo witnessed Appellee in the store after she was given a criminal trespass warning, he called the Silver City Police Department to confirm that Appellee's criminal trespass warning was still active, and to report Appellee's presence in the store in violation of that warning. Again, the jury did not receive any evidence suggesting that Appellant Bencomo had been advised that Appellee had been readmitted to the Silver City Wal-Mart, or otherwise knew, or should have known, that the criminal trespass warning was invalid. Further, there was no evidence that Appellant Bencomo provided false information, knowingly or otherwise, to the Silver City Police Department on December 21, 2013, that resulted in officers responding to the store. We cannot say that providing accurate information to police is the type of socially reprehensible conduct intended to be addressed by IIED claims. *See Zamora v. Creamland Dairies, Inc.*, 1987-NMCA-144, ¶ 30, 106 N.M. 628, 747 P.2d 923 (stating that "[p]ublic policy favors the exposure of crime" and "giv[ing] citizens wide latitude in reporting facts to authorities so as not to discourage the exposure of crime" furthers the community as a whole's "important stake in encouraging private citizens to assist officers in enforcing the law"). Accordingly, as a matter of law, we conclude that there was insufficient evidence for the jury to conclude that Appellant Bencomo's conduct on December 21, 2013, was "extreme and outrageous." *See* UJI 13-6128.

**{14}** Consequently, we conclude that Appellants were entitled to judgment as a matter of law as to Appellee's claim for IIED and turn next to consider Appellee's claim of intentional spoliation.

**D.     Intentional Spoliation of Surveillance Video of Appellee's July 2013 Arrest**

**{15}** Appellant Walmart contends that it is entitled to judgment as a matter of law on Appellee's intentional spoliation of evidence claim related to the loss or destruction of surveillance videos of her July 2013 arrest for shoplifting at a Walmart store in Silver City, New Mexico.

**{16}** To prove the tort of intentional spoliation, our Supreme Court identified the following elements: "(1) the existence of a potential lawsuit; (2) the defendant's knowledge of the potential lawsuit; (3) the destruction, mutilation, or significant alteration of potential evidence; (4) intent on part of the defendant to disrupt or defeat the lawsuit; (5) a causal relationship between the act of spoliation and the inability to prove the lawsuit; and (6) damages." *Coleman v. Eddy Potash, Inc.*, 1995-NMSC-063, ¶ 13, 120 N.M. 645, 905 P.2d 185, *overruled on other grounds by Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 131 N.M. 272, 34 P.3d 1148. Our Supreme Court has since explained "that the element of an intent to disrupt or defeat a lawsuit refers not to a mere intentional act but to a level of culpability that is particularly egregious in civil actions: a malicious intent to harm." *Torres v. El Paso Elec. Co.*, 1999-NMSC-029, ¶ 48, 127 N.M. 729, 987 P.2d 386, *overruled on other grounds by Herrera v. Quality Pontiac*, 2003-NMSC-018, 134 N.M. 43, 73 P.3d 181. For that reason, our Supreme Court has held that intentional spoliation of evidence requires "the sole intent to maliciously defeat or disrupt a lawsuit." *Id.* ¶ 50.

**{17}** Pursuant to UJI 13-1650 NMRA, the jury was instructed that to find in favor of Appellee on her claim of intentional spoliation, it was required to find:

1. There was the potential for a lawsuit;

2. [Appellant] Bencomo knew there was the potential for a lawsuit;

3. [Appellant] Bencomo failed to preserve potential evidence;

4. By [his] conduct[, Appellant] Bencomo's sole intent was to disrupt or defeat a potential lawsuit;

5. The destruction of the evidence resulted in [Appellee's] inability to prove her case; [and]

6. [Appellee] suffered damages as a result of the destruction.

Here, we understand Appellants to challenge only the sufficiency of the evidence of the fourth element, arguing that Appellant Bencomo's actions demonstrated, "at the worst, negligence and a failure to conform to standards." Before explaining why we agree, we first discuss the scope of Appellants' challenge.

**{18}** Contrary to our understanding of Appellant's challenge on this point, Appellee construes Appellants' brief in chief to also challenge the first, second, and third elements of intentional spoliation. As a result, Appellee addressed each of the

perceived challenges in turn. We do see some merit to Appellee's reading as Appellants did explicitly call into question the sufficiency of the evidence supporting the second element, albeit it was in the section of their brief in chief challenging the punitive damages award on the intentional spoliation claim. Notwithstanding Appellee's perception of Appellants' challenge, Appellants have only advanced an argument as to the fourth element in their reply brief and otherwise failed to respond to Appellee's arguments in her answer brief as to the sufficiency of the evidence of the first, second, and third elements. For these reasons, we conclude that Appellants have conceded all but their challenge to the fourth element. *See Delta Automatic Sys., Inc. v. Bingham*, 1999-NMCA-029, ¶ 31, 126 N.M. 717, 974 P.2d 1174 (stating that a litigant's reply brief failing to respond to an argument in the answer brief "constitutes a concession on the matter").

**{19}** Before addressing the merits of Appellants' challenge, we pause to reiterate the standard by which we measure Appellants' challenge to the jury's verdict as to the spoliation of evidence claim. We do so because "[o]ur Supreme Court has cautioned that judgment as a matter of law is a drastic measure that is generally disfavored inasmuch as it may interfere with the jury function and intrude on a litigant's right to a trial by jury." *Am. Nat'l Prop. & Cas. Co.*, 2013-NMCA-013, ¶ 7 (internal quotation marks and citation omitted).

**{20}** To grant judgment as a matter of law, the court must find that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Rule 1-050(A)(1). That is, judgment as a matter of law is proper when there is "no substantial evidence supporting one or more essential elements of the case." *Klopp*, 1992-NMSC-008, ¶ 3; *see Collado*, 2023-NMCA-014, ¶ 9 ("A motion for [judgment as a matter of law] is an objection to the sufficiency of the evidence to support the jury's verdict." (internal quotation marks and citation omitted)).

**{21}** "In reviewing whether a [judgment as a matter of law is] appropriate, we consider all evidence that has been properly admitted at trial, as well as all reasonable inferences deducible therefrom, resolving any conflicts or contradictions in the evidence in a light most favorable to the party resisting the motion." *McNeill*, 2003-NMCA-078, ¶ 31. "We review de novo the question [of] whether sufficient evidence exists as a matter of law to justify a verdict in one party's favor." *Id.*

**{22}** What is more, "[a]lthough appellate courts are highly deferential to a jury's decisions, it is the independent responsibility of the courts to ensure that the jury's decisions are supportable by evidence in the record, rather than mere guess or conjecture." *State v. Slade*, 2014-NMCA-088, ¶ 14, 331 P.3d 930 (internal quotation marks and citation omitted); *see* UJI 13-2005 NMRA (stating that "[y]our verdict should not be based on speculation, guess or conjecture"). That is, "[e]vidence from which a proposition can be derived only by speculation among equally plausible alternatives is not substantial evidence of the proposition." *Baca v. Bueno Foods*, 1988-NMCA-112, ¶ 15, 108 N.M. 98, 766 P.2d 1332. "This principle necessarily requires a reviewing court to distinguish between conclusions based on speculation and those based on

inferences, a task that is not always straightforward." *Slade*, 2014-NMCA-088, ¶ 14; *see Romero v. State*, 1991-NMCA-042, ¶ 38, 112 N.M. 291, 814 P.2d 1019 (noting that "the line between speculation and reasonable inference is not always clear"). "[T]his Court has made clear that an inference must be linked to a fact in evidence." *Slade*, 2014-NMCA-088, ¶ 14. "A reasonable inference is a conclusion arrived at by a process of reasoning[,] which is a rational and logical deduction from facts admitted or established by the evidence." *Id.* (alterations, internal quotation marks, and citation omitted); *see also Bowman v. Inc. Cnty. of Los Alamos*, 1985-NMCA-040, ¶ 9, 102 N.M. 660, 699 P.2d 133 ("An inference is more than a supposition or conjecture. It is a logical deduction from facts which are proven, and guess work is not a substitute therefor." (internal quotation marks and citation omitted)). "[A reasonable] inference may not be based on a series of inferences." *Slade*, 2014-NMCA-088, ¶ 14. "At some point, the link between the facts and the conclusion becomes so tenuous that we call it speculation." *State v. Maes*, 2007-NMCA-089, ¶ 18, 142 N.M. 276, 164 P.3d 975 (internal quotation marks and citation omitted)).

**{23}** With this in mind, we turn to Appellants' challenge. We begin by setting forth the evidence on which the jury could have relied to find that Appellant Bencomo's sole intent was to disrupt or defeat a potential lawsuit. That evidence was: (1) Wal-Mart's written policy required copies of the video surrounding all shoplifting stops to be retained; (2) Appellant Bencomo testified that it is his personal practice to preserve video of shoplifting stops when asked to do so by police; (3) an officer with the Silver City Police Department testified that he asked Appellant Bencomo to preserve video of the subject stop; (4) the jury was shown videos from a different yet proximal in time incident that demonstrated that the Silver City Wal-Mart had cameras that covered the area where Appellant Bencomo testified the stop occurred; (5) Silver City Wal-Mart's DVR system automatically retained video captured by its cameras for up to ninety days; and (6) videos taken by the cameras covering the area where Appellant Bencomo testified the stop occurred were retained for that full period.

**{24}** Additionally, within the ninety-day period, Appellant Bencomo testified at a preliminary hearing in the criminal proceedings against Appellee. At the preliminary hearing, Appellant Bencomo (1) testified that the Silver City Wal-Mart had footage of Appellee in the store on the day of the shoplifting stop; (2) offered to copy the footage to a CD upon Appellant Bencomo's return to the store after the preliminary hearing; and (3) was served in the criminal case with a subpoena requesting production of the same. The evidence also established that on the ninety-first day following the stop, Wal-Mart responded to the subpoena advising that the video was no longer available.

**{25}** Apart from this evidence and some contradictions in the evidence regarding the preservation and loss of the video, the evidence presented during the trial failed to establish, as it must, that the video was *intentionally* destroyed, much less destroyed or lost because "[Appellant Bencomo]'s *sole intent* was to disrupt or defeat a potential lawsuit." *See* UJI 13-1650 (emphasis added); *see also Torres*, 1999-NMSC-029, ¶ 50

(stating that the tort of intentional spoliation "seeks to remedy acts taken with the *sole intent to maliciously* defeat or disrupt a lawsuit" (emphasis added)).[2]

**{26}** Based on the evidence presented at the trial, when viewed in the light most favorable to the Appellee, we conclude that there are no reasonable inferences from which a rational jury could conclude that Appellants destroyed or lost the video with the "sole intent . . . to disrupt or defeat a potential lawsuit." *See* UJI 13-1650. The evidence here only provides conjecture as to the reason for the loss or destruction of the video. At most, the evidence demonstrated negligence by Appellants in the preservation and loss of the video, but was insufficient to establish that "[b]y [his] conduct Appellant Bencomo's *sole intent* was to disrupt or defeat a potential lawsuit." For these reasons, we conclude that "a reasonable jury would not have a legally sufficient evidentiary basis to find for [Appellee] on [her claim for intentional spoliation]," Rule 1-050(A)(1), and that Appellants were entitled to judgment as a matter of law as to the claim for intentional spoliation.

## II.     Punitive Damages

**{27}** Appellants argue that the punitive damages that the jury awarded for Appellee's MAP, IIED, and intentional spoliation claims are not supported by the evidence presented at trial. Because we have found there is insufficient evidence supporting the jury's verdict on Appellee's MAP, IIED, and intentional spoliation claims, we reverse the jury's punitive damages verdicts for those claims.

## CONCLUSION

**{28}** For the reasons set forth above, we reverse the jury's award of compensatory and punitive damages on Appellee's MAP, IIED, and intentional spoliation claims and remand for entry of an order setting aside the verdicts of the jury as to those claims and entry of judgment in favor of Appellants and against Appellee as to those claims and for such further proceedings as are consistent with this opinion.

**{29}   IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

---

2We recognize our Supreme Court has established in *Torres* that the loss or destruction of evidence in an intentional spoliation of evidence claim must result from "the sole intent to *maliciously* defeat or disrupt a lawsuit," 1999-NMSC-029, ¶ 50 (emphasis added), we further recognize that the jury instruction given to the jury in this case, did not include the requirement of maliciousness. Here, following the language of UJI 13-1650, the jury was instructed that "[b]y [his] conduct Appellant Bencomo's sole intent was to disrupt or defeat a potential lawsuit." UJI 13-1650. Thus, we acknowledge that there is a difference in the standard established by our Supreme Court in Torres and the standard set in UJI 13-1650. Because the jury instructions given in this case are the law of the case, we apply the standard set forth therein in resolving this issue. *See Fleetwood Retail Corp. of N.M.*, 2007-NMSC-047, ¶ 33 (noting that the instructions become the law of the case).

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**MEGAN P. DUFFY, Judge (concurring in part, dissenting in part)**

**DUFFY, Judge (concurring in part and dissenting in part).**

**{30}**   I concur in the majority's decision to reverse the jury's verdict on Plaintiff's MAP and IIED claims, but do not agree that the intentional spoliation claim must be reversed. In my view, the jury was presented with sufficient evidence to establish Defendant Bencomo's intent, and the majority opinion's reversal rests on an improper weighing of that evidence.

**{31}**   The sole issue Defendants raised with respect to the intentional spoliation claim is that the evidence presented on the fourth element—that "[b]y [his] conduct, Defendant Bencomo's sole intent was to disrupt or defeat a potential lawsuit"—was only sufficient to establish negligence, and not intentional conduct. But the jury received evidence that Defendant Bencomo knew the video evidence would be destroyed unless timely preserved, had notice that he was in fact supposed to preserve the video, and failed to do so. Based on these facts, and viewing this evidence in the light most favorable to the jury's verdict, a jury could reasonably infer Defendant Bencomo's intent based on his inaction within the time for preserving the video, particularly in the face of multiple requests (including a subpoena) and promises to preserve the evidence within the ninety-day period.

**{32}**   The majority opinion's contrary conclusion rests on the premise that "[t]he evidence here only provides conjecture as to the reason for the loss or destruction of the video." Maj. op. ¶ 26. But it is well settled that intent can be inferred from the circumstances. *See Papatheofanis v. Allen*, 2010-NMCA-036, ¶ 14, 148 N.M. 791, 242 P.3d 358 ("A jury is permitted to infer the requisite intent from circumstantial evidence, provided the inference is reasonable."). The majority opinion does not, in my view, offer a persuasive rationale to explain why the circumstances described above are not sufficient to demonstrate intentional conduct, and the majority's conclusion that Defendants' conduct was, "at most" negligent, appears to rest on a weighing of the evidence—a role reserved for the fact-finder and not for the reviewing court on appeal.

**{33}**   Viewing the evidence above in the light most favorable to the verdict, as we must, the evidence presented was enough to support the jury's verdict. I would have affirmed the jury's verdict on the intentional spoliation claim.

**MEGAN P. DUFFY, Judge**